Jack F. HOUGHTON, in his capacity as Chief Executive Officer of Campbell County Hospital District, doing business as Campbell County Memorial Hospital and Campbell County Hospital District, Appellants (Defendants),

v.

Ronald FRANSCELL and News–Record, Inc., d/b/a The Gillette News–Record, Appellees (Plaintiffs).

No. 93–142.

Supreme Court of Wyoming.

March 14, 1994.

Thomas E. Lubnau II and Daniel B. Bailey, Lubnau and Bailey, Gillette, for appellants.

Michael J. Krampner, Casper, for appellees.

Richard Rideout, Herschler, Freudenthal, Salzburg, Bonds & Rideout, P.C., Cheyenne, amici curiae, for Campbell County Med. Soc.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.

GOLDEN, Justice.

This appeal concerns the interpretation of Wyo.Stat. § 16–4–203(d)(vii) (1990) which withdraws from public inspection "[h]ospital records relating to medical administration, medical staff, personnel, medical care and other medical information, whether on individual persons or groups, or whether of a general or specific classification." At issue is a so-called physician recruitment contract between the hospital district, through its governing board, and a private health care provider, which contains information of the financial inducements paid by the district to the health care provider to induce the latter to relocate to the district's geographical area. We must decide whether such a contract is a hospital record exempt from public inspection under Wyo.Stat. § 16–4–203(d).

The district court held as a matter of law that physician recruitment contracts are not included within those exempt hospital records and ordered disclosure of the contracts. We affirm.

## ISSUES

Appellant Campbell County Hospital District presents the following issue for review:

Does the exception to the Wyoming Public Records Act contained in Wyoming

Statute § 16–4–203(d)(vii) include physician recruitment contracts?

Appellee, the Gillette News–Record, rephrases the issue as:

> Are contracts guaranteeing a minimum income, as well as other financial incentives, between a public hospital district and a doctor, exempt from disclosure under Wyoming Public Records Act Section 16–4–203(d)(vii)?

## FACTS

On October 22, 1992, appellee Gillette News–Record requested from appellant Campbell County Hospital District access to any and all records concerning guarantees of income made to physicians locating in Gillette, specifically the physician recruitment contract entered into with Dr. Michael Darnell. The parties agree that the pertinent information sought, in the form of the physician recruitment contract, includes guarantees of income and other financial benefits to specific physicians and the physicians' obligations in return. The hospital district refused to disclose the records, contending the physician recruitment contracts were hospital records exempt from disclosure under WYO.STAT. § 16–4–203(d)(vii).

Appellee filed a *Petition and Complaint for Access to Records* in district court on January 25, 1993. Trial was held on April 14, 1993, and the district court entered its judgment and order on April 22, 1993. The district court held the physician recruitment contract did not constitute a hospital record exempt from disclosure under WYO.STAT. § 16–4–203(d)(vii) and ordered the hospital district to disclose the contract to appellee. This appeal followed.

## DISCUSSION

### I

██ The Wyoming Public Records Act, WYO.STAT. § 16–4–201 *et seq.* (1990), permits any person to access public records. WYO. STAT. § 16–4–202(a) provides in part: "All public records shall be open for inspection by any person at reasonable times, except as provided in this act or as otherwise provided by law * * *."

██ The object of the public records act is disclosure, not secrecy, and we therefore interpret the act liberally in favor of disclosure, construing all exemptions narrowly. *Sheridan Newspapers, Inc. v. City of Sheridan,* 660 P.2d 785, 793, 794 (Wyo.1983); and *Laramie River Conservation Council v. Dinger,* 567 P.2d 731, 733 (Wyo.1977). Legislation requiring disclosure of information is considered remedial, and

> [r]emedial statutes are liberally construed to suppress the evil and advance the remedy. The policy that a remedial statute should be liberally construed in order to effectuate the remedial purpose for which it was enacted is firmly established.

NORMAN J. SINGER, 3 SUTHERLAND STATUTORY CONSTRUCTION § 60.01 at 147 (5th Ed.1992). *See also, Heltzel v. Thomas,* 516 N.E.2d 103, 106 (Ind.App.1987). The remedial purpose of the public records act is to permit access to public records unless disclosure would inflict irreparable harm contrary to protected rights.

> The courts, legislature, administrative agencies, and the state, county and municipal governments should be ever mindful that theirs is public business and the public has a right to know how its servants are conducting its business. * * * The citizenry must be permitted to hear and see what public officers and their employees say and do whenever the imparting of this knowledge does not run contrary to the rights of those otherwise protected in a way that would result in disclosure having the effect of inflicting such irreparable harm as is recognized at law.

*Sheridan Newspapers,* 660 P.2d at 791.

██ Maintaining an open and accountable government is particularly important with respect to the expenditure of public funds. *Record–Times v. Town of Wheatland, Etc.,* 650 P.2d 297, 300 (Wyo.1982). "Where a public interest is affected, an interpretation is preferred which favors the public." NORMAN J. SINGER, 2B SUTHERLAND STATUTORY CONSTRUCTION § 56.01 at 303 (5th Ed.1992). In this instance, the public interest affected

is the public's right to access information concerning the expenditure of public funds to enhance the quality of a community's health care. In *Sheridan Newspapers* this court confirmed the public's interest in disclosure and the presumption favoring that interest.

> [T]he language of the statute imposes a legislative presumption which says that, where public records are involved, the denial of inspection is contrary to the public policy, the public interest and the competing interests of those involved.

*Sheridan Newspapers*, 660 P.2d at 796.

■ This court has also recognized that the freedom-of-the-press and due process provisions of the Federal and Wyoming constitutions guarantee a person's right to access public records, and absent a compelling state interest, the state may not exclude an entire class of records from public inspection. *Sheridan Newspapers*, 660 P.2d at 794 (*citing Branzburg v. Hayes*, 408 U.S. 665, 721, 92 S.Ct. 2646, 2692, 33 L.Ed.2d 626 (1972); *Pell v. Procunier*, 417 U.S. 817, 833, 94 S.Ct. 2800, 2809, 41 L.Ed.2d 495 (1974); *also citing* Wyo.Const. art. 1 §§ 6, 20 and U.S. Const. amend. I, XIV). *See also Record–Times*, 650 P.2d at 301 n. 4 (citing *Globe Newspaper Co. v. Superior Court for the County of Norfolk*, 449 U.S. 894, 101 S.Ct. 259, 66 L.Ed.2d 124 (1980); *Gannett Co. v. DePasquale*, 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979)). We stated in *Sheridan Newspapers* that

> [t]he legislature does indeed have authority to promulgate and has imposed such statutory restraints upon the news-gathering business as will best serve the public good. These restraints may not, however, unlawfully deny the people's right to be kept informed. A restriction having this effect would run the risk of a First or Fourteenth Amendment violation.

*Sheridan Newspapers*, 660 P.2d at 795.

It is in light of the legislative presumption of openness, and in keeping with the constitutional right of access to public records that we interpret the exemption to disclosure provided by Wyo.Stat. § 16–4–203(d)(vii).

## II

Wyo.Stat. § 16–4–203 exempts certain records from disclosure under the act. This appeal requires that we interpret the exemption found at Wyo.Stat. § 16–4–203(d)(vii). That provision reads:

(d) The custodian shall deny the right of inspection of the following records, unless otherwise provided by law:

(vii) Hospital records relating to medical administration, medical staff, personnel, medical care and other medical information, whether on individual persons or groups, or whether of a general or specific classification.

■ This court has stated that "the initial step in arriving at a correct interpretation * * * is an inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection." *Parker Land & Cattle Co. v. Wyoming Game & Fish Comm'n*, 845 P.2d 1040, 1042 (Wyo.1993) (quoting *Rasmussen v. Baker*, 7 Wyo. 117, 133, 50 P. 819, 823 (1897)). A statute "must be construed as a whole in order to ascertain its intent and general purpose and also the meaning of each part." *Parker*, 845 P.2d at 1042 (quoting *Ross v. Trustees of Univ. of Wyoming*, 31 Wyo. 464, 489, 228 P. 642, 651 (1924)). This court gives effect to every word, clause and sentence, construing all components of a statute in *pari materia*. *Parker*, 845 P.2d at 1042. We presume that the legislature enacts statutes "with full knowledge of the existing condition of the law and with reference to it." *Parker*, 845 P.2d at 1044 (quoting *Civic Ass'n of Wyoming v. Railway Motor Fuels*, 57 Wyo. 213, 238, 116 P.2d 236, 245 (1941)).

■ When we interpret a statute, reading it as a whole, we must determine whether the language of the statute is plain and unambiguous. A "statute is unambiguous if its wording is such that reasonable persons are able to agree as to its meaning with consistence and predictability." *Parker*, 845 P.2d at 1043 (quoting *Allied–Signal, Inc. v. Wyoming State Bd. of Equalization*, 813 P.2d 214, 219 (Wyo.1991)). A statute is ambiguous if "its meaning is uncertain, doubtful, or if a single

term can fairly be said to mean different things." *Moncrief v. Wyoming State Bd. of Equalization,* 856 P.2d 440, 443 (Wyo.1993) (quoting *Amoco Production Co. v. State,* 751 P.2d 379, 381 (Wyo.1988)).

 If the language of the statute is plain and unambiguous, we apply its plain meaning and need not consult the numerous rules of statutory construction. *W.A.R.M. v. Bonds,* 866 P.2d 1291, 1294 (Wyo.1994); *Parker,* 845 P.2d at 1043. However, while a determination that the meaning is not subject to varying interpretations will usually end our inquiry, we may resort to extrinsic aids of interpretation, such as legislative history and rules of construction, to confirm our determination. *Parker,* 845 P.2d at 1045. To determine the legislative intent in enacting a statute, or a provision thereof, we have said

> the court * * * must look to the mischief the act was intended to cure, the historical setting surrounding its enactment, the public policy of the state, the conditions of the law and all other prior and contemporaneous facts and circumstances that would enable the court intelligently to determine the intention of the lawmaking body.

*Parker,* 845 P.2d at 1044 (quoting *Carter v. Thompson Realty Co.,* 58 Wyo. 279, 291, 131 P.2d 297, 299 (1942)).

### III

Appellant hospital district asserts that the language of the exemption is plain and unambiguous and excludes from public inspection, among other records, all hospital or hospital district records relating to medical staff. Appellant contends that a physician recruitment contract is a contract between the hospital and a member of the hospital staff and thus constitutes a hospital record relating to medical staff.

 Appellee newspaper agrees that the language is plain and unambiguous, but contends that the exemption does not include hospital district records and excludes from public inspection only hospital records relating to medical information concerning specific patients. Appellee argues that hospital records are not the same as hospital district records, physicians entering into the agreements with the hospital district are not members of the hospital staff and, when read in conjunction with the other exemptions, hospital records cannot include contracts to spend public funds.

Having carefully reviewed the language of Wyo.Stat. § 16–4–203(d)(vii) and considered the competing arguments, we hold the language is plain and unambiguous, and we agree with appellee's construction, although we do not limit the exemption to medical information only [1].

In determining the types of records exempted from disclosure by 16–4–203(d)(vii), we initially consider the ordinary meaning of *hospital record.* A *record* is defined as "a body of known or recorded facts regarding something or someone." *Webster's New Collegiate Dictionary* 984 (9th ed. 1988). *Webster's* defines a *hospital* as "an institution where the sick or injured are given medical or surgical care." *Webster's New Collegiate Dictionary* 583 (9th ed. 1988).[2] We thus

---

1. Our research in this case led us to a Wyoming Attorney General Opinion. The opinion related to the applicability of the hospital records exemption to information concerning compensation of hospital administrators and employees. The opinion reached the conclusion that the exemption applied only to medical information. We note, however, that the legislature subsequently removed the comma following the term "medical care" so that the current version of the exemption reads "medical care and other medical information," as opposed to "medical care, and other medical information." We thus conclude that the legislature intended to clarify that the exemption is not limited to medical information only. 21 Op. Att'y Gen. 73 (1973).

2. The term is similarly defined in several Wyoming statutes. Wyo.Stat. § 35–2–403(b)(i) (Supp. 1989) defines hospital as

> any institution, place, building or agency in which any accommodation is maintained, furnished or offered for the hospitalization of the sick or injured or care of any person requiring or receiving chronic or convalescent care, and includes public health centers, community mental health centers and other types of hospitals and centers, including but not limited to general, tuberculosis, mental and chronic disease hospitals, and also medical facilities, and related facilities.

> Hospital is again defined at Wyo.Stat. § 35–2–605(a)(ix) (Supp.1991) as

conclude that the ordinary meaning of *hospital record* is a body of information developed or maintained by a hospital concerning its day-to-day business of providing medical or surgical care to the sick or injured.[3]

Having ascertained the ordinary definition of hospital record, we must next determine what constitutes a hospital record relating to medical administration or medical staff. We have reviewed the hospital records exemption in conjunction with the other exemptions found under Wyo.Stat. § 16-4-203(d), and the statute sets forth ten classifications of information withdrawn from public inspection. The common thread running through these ten classifications is personal information instinct with a privacy interest.

Our review of the public records statutes of all the states and the District of Columbia suggests that protection of privacy interests is generally the focus of hospital/medical record exemptions. We found only one state whose public records statute uses language similar to Wyoming's in exempting hospital records from public access. *See* Md.State Gov't Code Ann. § 10-616(j) (1993). The majority of other jurisdictions specifically

limits the exemption to one of the following categories of records: medical records concerning a patient, hospital/medical records where disclosure would constitute an unwarranted invasion of privacy, or a more general exemption of all records whose disclosure would constitute an unwarranted invasion of privacy.[4]

■ Georgia is among the states which exempts from public inspection medical records the disclosure of which would constitute an unwarranted invasion of privacy. *See* Ga.Code Ann. § 40-2703(c)(1) (Harrison Supp.1993). The Supreme Court of Georgia has defined an unwarranted invasion of privacy, for purposes of exemption under the Georgia Open Records Act, as

unwarranted publicity, unwarranted appropriation or exploitation of one's personality, or the publicizing of one's private affairs with which the public had no legitimate concern.

*Richmond County. Hosp. Auth. v. S.E. Newspapers Corp.*, 252 Ga. 19, 311 S.E.2d 806, 807 (1984) (citations omitted). In that

---

[an] establishment with [an] organized medical staff, with permanent facilities that include inpatient beds, and with medical services, including physician services and continuous nursing services, to provide diagnosis, treatment and continuity of care for patients.
*See also* Wyo.Stat. § 35-2-901(a)(xiii) (Supp. 1989).

**3.** A review of the definition of *hospital records* provided in other state statutes confirms this definition. For example, Mississippi defines *hospital record*:
"Hospital records" shall mean, without restriction, those medical histories, records, reports, summaries, diagnoses and prognoses, records of treatment and medication ordered and given, notes, entries, X-rays and other written or graphic data prepared, kept, made or maintained in hospitals that pertain to hospital confinements or hospital services rendered to patients admitted to hospitals or receiving emergency room or outpatient care. * * * Such records shall not, however, include ordinary business records pertaining to patients' accounts or the administration of the institution.
Miss.Code Ann. § 41-9-61(b) (1993).
Tennessee defines *hospital record* at Tenn.Code Ann. § 68-11-302(5) (1992 & Supp.1993):
(A) "Hospital records" means those medical histories, records, reports, summaries, diagnoses, prognoses, records of treatment and

medication ordered and given, entries, X rays, radiology interpretations, and other written or graphic data prepared, kept, made or maintained in hospitals that pertain to hospital confinements or hospital services rendered to patients admitted to hospitals or receiving emergency room or outpatient care.

\* \* \* \* \* \*

(C) Such records shall not, however, include ordinary business records pertaining to patients' accounts or the administration of the institution * * *.

**4.** *See, e.g.,* Ark.Code Ann. § 25-19-105(b)(2) (Michie 1992 & Supp.1993); Cal Gov't Code § 6254(c) (West 1980 & Supp.1994); Conn.Gen Stat.Ann. § 1-19(b)(2) (1993); Del Code Ann tit. 29, § 10002(d)(1) (1991); Ga.Code Ann § 40-2703(c)(1) (Harrison Supp.1993); Ind.Code Ann § 5-14-3-3 (Burns 1987 & Supp.1993); Kan. Stat Ann. § 45-221(3), (30) (1993); Mich Comp Laws Ann. § 4.1801(13)(1) (Callaghan 1985); Neb. Rev Stat. § 84-712.05(2) (1987); N.H.Rev.Stat. Ann § 91-A:5 (1990 & Supp.1993); Or.Rev.Stat § 192.525 (1993); Tenn.Code Ann. § 10-7-504(a)(1) (1992); Utah Code Ann. § 63-2-302 (1993); Vt.Stat Ann tit. 1, § 317(b)(7) (1985); Wash.Rev.Code Ann. § 42.17.310 (West 1991 & Supp.1993); W.Va.Code § 29B-1-4 (1993).

case, the Georgia court held that the Richmond County Hospital Authority was properly ordered to disclose the names and salaries of those persons employed by the Authority who earn $28,000 or more per year. The court determined that the public had a legitimate interest in the operation of the hospital and the salaries paid, and that revealing the names and salaries did not constitute an invasion of privacy as defined above. *Richmond*, 311 S.E.2d at 807.

 We adopt Georgia's definition of invasion of privacy for purposes of exempting records from disclosure under the public records act. As we noted earlier, an open and accountable government is particularly important with respect to the expenditure of public funds. Members of the public have a legitimate interest in the operation of the county hospital and in the amount the community is spending to attract health care providers. Balanced against this interest, we conclude that disclosure of financial agreements between a county and a physician is not an unwarranted invasion of privacy, and such financial agreements are not the type of record the legislature sought to shield from inspection when it exempted hospital records from disclosure.

We find this conclusion supported by the fact that there is no hint in any of the ten withdrawal classifications concerning the expenditure of public funds. In fact, in that particular respect, Wyo.Stat. § 16–4–203(d)(iii) contains language in the last sentence expressly stating that information of the terms and conditions of public employment is not considered part of a personnel file and, therefore, shall not be withdrawn from public inspection.[5] One of the usual terms of a public employment document is the amount of public monies that will be paid by the public body to the public employee for services rendered. Thus, information of the expenditure of public funds in that employment context is expressly available for public inspection. It is but a short step, it seems to us, from the expenditure of public funds for

employment purposes to the expenditure of public funds to induce a health care provider to relocate to a community so that he or she may offer and provide, for private remuneration in addition to the initial public financial inducement, his or her health care services to private patients.

 From this close analogy, we are comfortable in holding that the legislature intended that information regarding the amount of financial inducement paid by a public body to a health care provider to relocate to a Wyoming community be available to public inspection. Given the overriding public interest in the full disclosure of information of expenditure of public funds, any legislative restriction on the disclosure of such public information must be expressly textual. (See cases in which we have held that the legislative intent to waive sovereign immunity, and legislative intent in the area of tax imposition, must be expressly textual. *Wyoming Mining Ass'n. v. State*, 748 P.2d 718, 721 (Wyo.1988); *Retail Clerks Local 187 v. Univ. of Wyoming*, 531 P.2d 884, 886 (Wyo.1975); *Kelsey v. Taft*, 72 Wyo. 210, 219–20, 263 P.2d 135, 137–38 (1953)).

 Although we are not presented with a constitutional challenge to the hospital records exemption, we reiterate that a constitutional right to access public records does exist and, absent a compelling state interest, that right cannot be denied. A review of the language prefacing the hospital records exemption demonstrates the legislature did not intend to create an exemption which would deny the public its constitutional right of access. That language provides "[t]he custodian shall deny the right of inspection * * * unless otherwise provided by law." Wyo. Stat. § 16–4–203(d).

We find it highly unlikely the legislature intended to create a blanket exemption for all records developed or retained by the hospital in the ordinary course of its business. An exemption insulating from public review all the records of a public entity probably

---

**5.** Wyo.Stat. § 16–4–203(d)(iii) reads, in relevant part:

> Employment contracts, working agreements or other documents setting forth the terms and conditions of employment of public officials and employees are not considered part of a personnel file and shall be available for public inspection.

would not pass constitutional muster, and as noted above, the legislature did not intend to deny the public a right of access otherwise provided by law.

We hold that a body of information, held by an institution where the sick or injured are given medical or surgical care, recording the amount of public funds and benefits expended by a public entity to induce a private health care provider to relocate to a Wyoming community where that private health care provider will thereafter offer his or her health care services to private patients, is not a hospital record relating to medical administration, medical staff, personnel, medical care and other medical information as set forth in WYO.STAT. § 16–4–203(d)(vii).

## CONCLUSION

We would do well to remember the wisdom eloquently expressed by the two most influential founders of our country. Thomas Jefferson wrote:

[T]he good sense of the people will always be found to be the best army. They may be led astray for a moment, but will soon correct themselves. The people are the only censors of their governors; and even their errors will tend to keep these to the true principles of their institution. To Punish these errors too severely would be to suppress the only safeguard of the public liberty. The way to prevent these irregular interpositions of the people, is to give them full information of their affairs through the channel of the public papers, and to contrive that those papers should penetrate the whole mass of the people. The basis of our governments being the opinion of the people, the very first object should be to keep that right; and were it left to me to decide whether we should have a government without newspapers, or newspapers without a government, I should not hesitate a moment to prefer the latter. But I should mean that every man should receive those papers, and be capable of reading them * * *. Cherish, therefore, the spirit of our people, and keep alive their attention. Do not be too severe upon their errors, but reclaim them by enlightening them.

Letter from Thomas Jefferson to Colonel Edward Carrington (January 16, 1787) *in* THE LIFE AND SELECTED WRITINGS OF THOMAS JEFFERSON at 411–12 (Adrienne Koch & William Peden eds., 1972).

Thirty-five years later, James Madison forcefully observed:

A Popular Government, without popular information, or the means of acquiring it is but a Prologue to a Farce or a tragedy; or perhaps both. Knowledge will forever govern ignorance; and the people who mean to be their own Governors, must arm themselves with the power which knowledge gives.

Letter from James Madison to W.T. Barry (August 4, 1822) *in* THE COMPLETE MADISON at 377 (Padover ed. 1953), *as quoted in* John J. Watkins, *Access to Public Records Under the Arkansas Freedom of Information Act,* 37 ARK.L.REV. 742, 839 n. 434 (1984).

WYO.STAT. § 16–4–203(d)(vii) exempts from disclosure under the Public Records Act only those records the disclosure of which would constitute an unwarranted invasion of privacy. We affirm the district court's decision ordering disclosure of the physician recruitment contract.