**WYOMING DEPARTMENT OF TRANSPORTATION; Don Diller in his official capacity as Director of Transportation, Appellant (Defendant),**

v.

**INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL UNION 800, Appellee (Plaintiff).**

**WYOMING CONTRACTORS' ASSOCIATION, Appellant (Intervening Defendant),**

v.

**INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL UNION 800, Appellee (Plaintiff).**

Nos. 95–47, 95–48.

Supreme Court of Wyoming.

Dec. 22, 1995.

Lillian Nicholas Sharpe, Assistant Attorney General, Cheyenne, for appellant.

David F. Evans of Hickey, Mackey, Evans, Walker & Stewart, Cheyenne, for appellee.

Raymond W. Martin and John Coppede of Sundahl, Powers, Kapp & Martin, Cheyenne, for intervening defendant appellant.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

GOLDEN, Chief Justice.

In this appeal we review a district court's order directing the Wyoming Transportation Department (WTD) to release payroll records, including the names and addresses of workers, which were provided to WTD by contractors for the purpose of aiding WTD in verifying compliance with the prevailing wage rate. The International Union of Operating Engineers Local Union 800 (Engineers) sought copies of those records and WTD agreed to release them, but only with the names and addresses of the workers expunged.

We affirm.

WTD raises this issue:

Did the Wyoming Department of Transportation properly limit the disclosure of federal certified payrolls by refusing to release the names and addresses of private individuals employed on federal-aid projects?

Intervening appellant, Wyoming Contractors' Association,[1] poses this question:

Whether the district court erred in ordering a state agency to honor a public records request for information about private citizens where disclosure would reveal little or nothing about the agency's own conduct.

The Engineers summarize the subject of this appeal thus:

Does the Wyoming Department of Transportation have the right to delete the names and addresses of individual workers from certified payrolls of Wyoming con-

William U. Hill, Attorney General; Michael L. Hubbard, Deputy Attorney General;

---

1. Although the brief of the Contractors' Association is more narrowly drawn than that of WTD, for the sake of convenience and succinctness we will refer only to WTD in the text of the opinion since the interests of the Association are essentially the same as those of WTD.

tractors, held in the department's possession pursuant to prevailing wage statutes when said records are requested by the International Union of Operating Engineers, Local Union 800?

The parties submitted this matter to the district court on stipulated facts: WTD contracts with private contractors to undertake highway construction projects. If the highway is financed by only state funds, WTD requires a wage report which identifies the number of workers employed on that project, but not their names and addresses. If federal funds are expended on a project, then the contractors must submit a similar report which complies with the Davis–Bacon Act.[2] Briefly stated, the purpose of the Davis–Bacon Act is to protect workers by guaranteeing them minimum wages based on local prevailing wage rates.[3] That report requires inclusion of the names and addresses of all workers. For those projects which involve federal funds, WTD also requires that a parallel state report be made and, again, that form does *not* include workers' names and addresses. WTD also interviews workers on such highway projects (though a few may occasionally be missed) concerning compliance with wage rate laws and regulations. That form does include employee names. Attached to the stipulation was a policy statement from the United States Department of Transportation, Federal Highway Administration (FHA), stating the information on the Davis–Bacon form would be released by the FHA only after names, addresses, and social security numbers had been expunged.[4] That policy statement goes on to provide:

> When a requester seeks access to payroll records under a State FOIA, the State should respond in accordance with its own requirements. If those requirements permit the release of personal information, the

State may release names, addresses, and social security numbers to the requester.

The Engineers sought copies of the Davis–Bacon/Copeland forms. WTD agreed to provide all WTD forms, as well as Davis–Bacon/Copeland forms, but with names and addresses expunged.[5] The Engineers then sought relief from the district court as provided in Wyo.Stat. § 16–4–203(f) (Supp. 1995). The district court directed WTD to provide the Davis–Bacon/Copeland forms without redaction of the names and addresses of workers.

■ WTD presents the issue as one involving construction of a statute. Therefore, our review is directed by our established standard:

> Against this background of "legisprudence (the jurisprudence of legislation)", a useful outline of this court's method of statutory interpretation emerges. We read the text of the statute and pay attention to its internal structure and the functional relation between the parts and the whole. We make the determination as to meaning, that is, whether the statute's meaning is subject to varying interpretations. If we determine that the meaning is not subject to varying interpretations, that may end the exercise, although we may resort to extrinsic aids of interpretation, such as legislative history if available and rules of construction, to confirm the determination. On the other hand, if we determine that the meaning is subject to varying interpretations, we must resort to available extrinsic aids. If an ambiguous statute has been construed by an agency charged with administering it, we will accord deference to, but are not bound by, that construction. After all, the final construction of an ambiguous statute is a question for the court.

---

**2.** 40 U.S.C.S. § 276a (1994) and 29 C.F.R. § 3.3(b) (1995); compliance with the Copeland Act is also required. 40 U.S.C.S. § 276c (1994) and 29 C.F.R. § 3.1 (1995).

**3.** Also see Wyoming's Prevailing Wage Rate Act, Wyo.Stat §§ 27–4–401—413 (1991 and Supp. 1995).

**4.** This position is based on the federal Freedom of Information Act, 5 U.S.C.S. § 552(b)(6) (1989), (unwarranted invasion of personal privacy).

**5.** WTD would also expunge social security numbers and deductions, but no issue is raised with regard to those items of information.

*General Chemical Corp. v. Unemployment Insurance Comm'n*, 902 P.2d 716, 718 (Wyo. 1995); *Houghton v. Franscell*, 870 P.2d 1050, 1053–54 (Wyo.1994); *Parker Land & Cattle Co. v. Wyoming Game & Fish Comm'n*, 845 P.2d 1040, 1045 (Wyo.1993).

All parties concede the records at issue are public records as contemplated by Wyoming's Public Record's Act [6] and that WTD is the relevant custodian. However, the public records act places some limitations on the public's right of access to records. Pertinent to this appeal, WYO.STAT. § 16–4–203 (Supp. 1995) provides:

(a) The custodian of any public records shall allow any person the right of inspection of the records or any portion thereof except on one (1) or more of the following grounds or as provided in subsection (b) or (d) of this section:

\* \* \* \* \* \*

(ii) The inspection would be contrary to any federal statute or regulation issued thereunder having the force and effect of law;

\* \* \* \* \* \*

(d) The custodian shall deny the right of inspection of the following records, unless otherwise provided by law:

(i) Medical, psychological and sociological data on individual persons, exclusive of coroners' autopsy reports;

\* \* \* \* \* \*

(v) Trade secrets, privileged information and confidential commercial, financial, geological or geophysical data furnished by or obtained from any person;

We take note that WTD has its own set of regulations which guide it in responding to requests for public records. However, we also note WTD is not, in this circumstance, an agency with distinctive expertise to construe this special statute. Thus, we will not accord any deference to its construction of the statute or its parallel regulations.

Our precedents require the public records act be read in light of the legislative presumption of openness and in keeping with the constitutional right of access to public records. In addition, we construe the act liberally in favor of disclosure, interpreting all exemptions narrowly. The remedial purpose of the public records act is to permit access to public records unless disclosure would inflict irreparable harm contrary to protected rights. *Houghton*, 870 P.2d at 1052–53.

Although it is not entirely clear from WTD's brief, it appears WTD contends release of the names and addresses would infract WYO.STAT. § 16–4–203(a)(ii) (inspection would be contrary to any federal statute or regulation issued thereunder having the force and effect of law). WTD does not point to a statute, or regulation issued under such a statute, to which release of this information would be contrary.[7] We have found no such statute or regulation in our own search. The materials of record demonstrate that release of the disputed information is to be determined under Wyoming's public records statutes. We hold WYO.STAT. § 16–4–203(a)(ii) does not justify WTD's refusal to honor the Engineers' request for public records.

WTD also contends the disputed information constitutes "sociological data" which it is mandated to withhold under WYO.STAT. § 16–4–203(d)(i). Our statutes do not elaborate on the intended meaning of that phrase and our effort is, therefore, directed to an exploration of its ordinary meaning. *Houghton*, 870 P.2d at 1054. The "ordinary meaning" postulated by WTD is quite broad and we will not attempt to replicate its argument with any specificity. We are satisfied the legislature was speaking of information collected by social scientists gathered in:

[T]he systematic study of the development, structure, and function of human groups conceived as processes of interaction or as

---

6. WYO.STAT. § 16–4–201—205 (1990 and Supp. 1995).

7. To be specific, WTD contends: "[B]y releasing personal information on certified payrolls, the Wyoming Transportation Department is in possi-

ble violation of U.S. Department of Labor standards." Given the standard of review we employ when reviewing questions under the public records act, such speculative argument is not of assistance in resolving the issue.

organized patterns of collective behavior; the scientific analysis of a social institution as a functioning whole and as it relates to the rest of society; an analysis or exposition of the socially significant traits of a specific group, class or social milieu.

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, "*sociology* " p. 2163 (1986).

The phrase "sociological data" is not unique to Wyoming statutes, but our research revealed it appears in only a few other instances.[8] The phrase does appear in Colorado's public records act, but it is clear it does not usually encompass names and addresses there.[9] COLO.REV.STAT.ANN. § 24-72-204(3)(a)(I), (XI)(B), (c), (d) (West 1988 & Supp.1995). An Illinois statute prohibits the Department of Employment Security from releasing sociological data about persons applying for employment or help. ILL.ANN. STAT. ch. 20, para 1015/3 (Smith–Hurd 1993). The names and addresses of those persons are not a part of that "sociological data."[10] The phrase also appears occasionally in cases.[11] As an example, in *People v. Mata Aguilar*, 35 Cal.3d 785, 200 Cal.Rptr. 908, 910 n. 4, 915, 677 P.2d 1198, 1200 (n. 4), 1205 (1984), it is used in reference to language ability, extent of formal education, attendance at segregated school, language ability of seasonal farm workers, and language ability of Spanish speaking individuals who enlist in the U.S. military.

In summary, it suffices for us to conclude the phrase "sociological data," as used in WYO.STAT. § 16–4–203(d)(i), does not authorize the WTD to withhold the disputed names and addresses.

WTD contends the information can be withheld on the basis it is a trade secret or confidential commercial or financial information. No cogent argument is made, nor is pertinent authority cited. We will not consider that contention further.

WTD contends a balancing of the interests of the affected workers in their privacy, and the benefit of the information ("what the government is up to"[12]) to the Engineers, requires a conclusion that the district court erred in ordering release of the names and addresses. *See Houghton*, 870 P.2d at 1057. We cannot agree. On the face of things, the Engineers demonstrate the information can be used to audit WTD's, the FHA's, and contractors' efforts to comply both with federal requirements for a prevailing wage rate, as well as with Wyoming's parallel statutory requirements. For that reason alone, any countervailing interest of the workers in their privacy is outweighed by a public interest. *Houghton*, 870 P.2d at 1052–54.

WTD contends release of the information sought by the Engineers would constitute an unwarranted invasion of privacy. We are not convinced by WTD's argument[13] or authority that such an interest is at stake here. The argument relies almost entirely on construction of a federal exemption (see n. 4) which is not found in Wyoming's public records act. However, we are persuaded the record makes no suggestion that affected employees have complained about the potential of such a release, nor would it be likely such complaints, if made, could overcome the mandate of the public records act to release informa-

---

**8.** WESTLAW search of all state statutes, "sociological data."

**9.** The Colorado act appears to prohibit release of sociological data concerning certain applicants, but not their applications, names or addresses. It prohibits release of students' names and addresses, except to the U.S. Military (a variety of policies are available for this exception).

**10.** As examples of information that does come within its meaning, the statutory note includes: age, sex, nativity, trade or occupation, cause and duration of unemployment, marital status, number of children. The real thrust of the statute is that such information may not be compiled and then released in a form so as to identify the

individual or family which the information concerns because that information is private.

**11.** WESTLAW search of allstates and allfeds directories produced 19 state cases which used it and 26 federal cases.

**12.** See *U.S. Dept. of Justice v. Reporters Committee for Freedom of Press*, 489 U.S. 749, 773, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989); *U.S. Dept. of Defense v. Federal Labor Relations Authority*, ––– U.S. –––, 114 S.Ct. 1006, 127 L.Ed.2d 325 (1994).

**13.** See e.g., *Federal Labor Relations Authority v. U.S. Dept. of Defense*, 984 F.2d 370, 372 (10th Cir.1993).

tion. This is especially so because the workers have already released their names and addresses to the contractor, who has in turn released them to the State of Wyoming, who has in turn released that information to the federal government. There is no indication in the record that if the Engineers did contact the workers at their homes that such would be significantly disruptive of their privacy. The record simply does not provide any basis for denying release of the contested information. *Houghton,* 870 P.2d at 1056; *Laborers Int'l Union v. City of Aberdeen,* 31 Wash.App. 445, 642 P.2d 418, 421 (1982); and *see generally* Andrea G. Nadel, Annotation, *What Constitutes Personal Matters Exempt from Disclosure by Invasion of Privacy Exemption under State Freedom of Information Act,* 26 A.L.R. 4th 666, esp. § 4 (1983).

The order of the district court is affirmed.