183 Ariz. 589 (1995)
905 P.2d 598
KPNX-TV, Lew Ruggiero and the First Amendment Coalition of Arizona, Inc., Petitioners,
v.
SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF YUMA, The Honorable H. Stewart Bradshaw, a judge thereof, Respondent Judge, Jack R. HUDSON, Jr., the Yuma County Attorney's Office and State of Arizona, Respondents/Real Parties in Interest.
No. 1 CA SA 95-0228.
Court of Appeals of Arizona, Division 1, Department A.
November 2, 1995.
*591 Brown & Bain, P.A. by Daniel C. Barr, Anthony L. Marks, Sarah Ellison Porter, Phoenix, for Petitioners.
David S. Ellsworth, Yuma County Attorney by Mark Edward Hessinger, Yuma, for Respondents/Real Parties in Interest.

OPINION
NOYES, Presiding Judge.
Petitioners seek special action review of a trial court order denying public access to two videotapes in a Yuma Police Department investigation file. We have jurisdiction pursuant to Arizona Revised Statutes Annotated ("A.R.S.") section 12-120.21(A)(4) (1992) and the Rules of Procedure for Special Actions. Because Petitioners have no plain, speedy, and adequate remedy by appeal, we accept jurisdiction. Because we conclude that the videotapes are public records and that the Yuma County Attorney's Office ("the State") has shown good reason to deny public access to only one of the tapes, we grant partial relief.
*592 Facts
On July 4, 1995, two members of the Southwest Border Alliance ("SBA") task force were murdered and a third was wounded at SBA headquarters in Yuma. Yuma County Deputy Sheriff Jack Hudson, Jr. ("Defendant") was quickly arrested and charged with the crimes. On August 1, Petitioners filed a written request with the Yuma Police Department for copies of materials in the investigation file. The department disclosed many records, but it withheld a urinalysis report, a crime scene videotape, and a surveillance videotape.
The State filed a motion in superior court, joined in by Defendant, requesting that the court conduct an in camera inspection of the withheld items and deny public access to them. The parties argued the motion and, on August 30, the trial court ordered disclosure of the urinalysis report but not the two videotapes. The court also ordered that Petitioners not publish the urinalysis report until noon on September 8, to allow any party time to seek review of the disclosure order. On September 6, Petitioners filed this Petition for Special Action. When we denied their request for an expedited hearing, Petitioners requested relief from the supreme court.
On September 7, the supreme court  having been advised that neither the State nor Defendant would seek appellate review regarding the urinalysis report  vacated that portion of the order delaying publication of the urinalysis report until September 8. The urinalysis report issue having become moot, we decline to address it. We address only Petitioners' request for access to the two videotapes and their claim for attorneys' fees.
Public Records
A.R.S. section 39-121.01(B) (1985) provides that "[a]ll officers and public bodies shall maintain all records reasonably necessary or appropriate to maintain an accurate knowledge of their official activities and of any of their activities which are supported by funds from the state or any political subdivision thereof." Arizona police investigative reports are public records. Little v. Gilkinson, 130 Ariz. 415, 416, 636 P.2d 663, 664 (App. 1981) ("Although many states exempt police investigative reports from their public-records access statutes, Arizona does not. See generally, Annot., 82 A.L.R.3d 19.").
The parties do not seriously dispute whether the two videotapes in question are public records, but there is no Arizona authority on the subject. We find analogous authority persuasive. In Valley Broadcasting Co. v. United States District Court, the Ninth Circuit found that audiotapes and videotapes admitted into evidence at a criminal trial are subject to the rules regarding public access to court records. 798 F.2d 1289 (9th Cir.1986). Arizona Supreme Court Administrative Order 95-35, filed on June 7, 1995, defines "court records" to include "all existing documents, papers, letters, maps, books, tapes, photographs, films, sound recordings or other materials, regardless of physical form or characteristics, made or received pursuant to law or in connection with the transaction of any official business by the court." Similarly, we conclude that Arizona's definition of "public records" can include videotapes and does include the two videotapes at issue in this case.
Disclosure
Public records are presumed open to the public for inspection. Star Publishing Co. v. Pima County Attorney's Office, 181 Ariz. 432, 434, 891 P.2d 899, 901 (App. 1994). The burden falls solely on the public official to overcome the presumption favoring disclosure. Cox Arizona Publications, Inc. v. Collins, 175 Ariz. 11, 14, 852 P.2d 1194, 1198 (1993). To justify denying access to public records, the public official must demonstrate specifically how production of the records would violate rights of privacy or confidentiality or would be detrimental to the best interests of the state. Id. Whether a denial of access to public records is wrongful is an issue the appellate courts review de novo. Id.
The State argued that the crime scene videotape should not be released because it offered "a walking tour through the outside grounds and the inside of that facility" and exposed various security measures, *593 including the floor plan and contents of the facility's offices and evidence room. Because the facility contains drugs, police equipment, investigative files, and confidential informant information, the State argued that the facility might be a burglary target, and that a burglar would receive valuable intelligence from the crime scene videotape. The State conceded that the surveillance videotape did not show much of the facility. However, the State argued that the area shown on this tape  the evidence locker  is not open to the public and, further, that the tape shows the location of the surveillance camera and the faces of four undercover officers, including the surviving victim.
In denying disclosure of the two videotapes, the trial court found as follows:
The two video tapes appear, at least in this court's view, to be sufficiently revealing of or related to the internal security of the Southwest Border Alliance and those who are employed there to be closed. (In the instance of the security tape it shows the defendant on approximately 6 frames out of at least 20,000 frames, and he is doing nothing whatsoever in any of them. Those 6 frames and many other frames on the tape, however, depict the location not only of the camera's view; its relation to the evidence room; and of the content and other security of the room.)
Having viewed both tapes, we conclude that the State's arguments and the trial court's findings are sustainable regarding the surveillance camera videotape. However, we find no specific reason articulated by the State, found by the trial court, or apparent from the tape itself to warrant denial of public access to the crime scene videotape.
The twenty-minute crime scene videotape focuses on physical evidence in and around the SBA building. The exterior footage shows details of a parking lot surrounded by a chain-link fence. Any vehicles and security devices depicted on the tape appear to be in plain view of anyone in the area, and the record contains no indication to the contrary. The interior footage shows ordinary-appearing government offices, cubicles, filing cabinets, desks, and other furnishings and accessories. The tape contains occasional non-confidential dialogue from officers describing the scene. Because the interior footage focuses on evidentiary details such as blood, bullet-holes, and destruction, a viewer who is unfamiliar with the building will not learn much about its layout. We perceive no risk to State security from public disclosure of this videotape.
The surveillance camera videotape is a continuous record of the sparse activity in the SBA evidence locker from July 3 to July 5, 1995. The evidence locker is a walk-in caged enclosure somewhere inside the facility. Although most of the tape is black, there are a few scenes in which a person enters the locker and the lights come on until the person leaves a few seconds later. We agree that the State has legitimate security concerns about public disclosure of a videotape showing undercover officers, the SBA evidence locker, and the location of the surveillance camera. The data on the videotape could be photographed or manipulated to provide a graphic study of the officers' faces and the contents, construction, and security of the evidence locker. The risk that anyone might use this video information to harm an officer or to burglarize the evidence locker seems slight, but the risk exists and its potential harm to life and law enforcement is great.
Release of footage depicting Defendant would not seem to pose a threat to his security, for he is in custody, but footage of Defendant cannot be disclosed without also disclosing the above-described details of the evidence locker and its security devices, which the State should not have to disclose.
We find no abuse of trial court discretion in concluding that the State's safety and security concerns outweigh the public's right of access to the surveillance camera videotape of the SBA evidence locker.
Attorneys' Fees in the Trial Court
Petitioners request an award of attorneys' fees and costs pursuant to A.R.S. section 39-121.02(B), which provides:
If the court determines that a person was wrongfully denied access to or the right to copy a public record and if the court finds *594 that the custodian of such public record acted in bad faith, or in an arbitrary or capricious manner, the superior court may award to the petitioner legal costs, including reasonable attorney fees, as determined by the court.
The trial court has discretion to decide whether a custodian of records acted in bad faith, arbitrarily or capriciously. Star Publishing, 181 Ariz. at 434-35, 891 P.2d at 901-02. The trial court's determination on this issue will be upheld unless it is clearly erroneous. Cox, 175 Ariz. at 14, 852 P.2d at 1198.
The State claimed that it acted with specific reason and good faith in withholding the videotapes, and that it sought in camera review of the tapes as directed by Mathews v. Pyle, 75 Ariz. 76, 81, 251 P.2d 893, 896-97 (1952). The trial court agreed and aptly stated that "[t]he mere fact that two parties may disagree on a fact or point of law does not make a party's concern either arbitrary or capricious." We find no error in the trial court's denial of Petitioners' request for an award of attorneys' fees.
We caution, however, that a custodian of public records (or its attorney) does not necessarily demonstrate good faith merely by requesting that the trial court determine what must be disclosed. In this case, for example, the State's alleged reasons for withholding the parking lot footage are much weaker than those regarding the interior footage. When the records custodian denies access to an entire public record and asks the court to decide what portion must be disclosed, if any, the custodian should demonstrate specific reasons and a good faith basis for refusing access to the entire record. Good reason to deny access to part of a record is not necessarily good reason to deny access to all of it. Assuming that the record can be redacted, the custodian should consider disclosing what it can and then submitting the entire record to the court for in camera review, with specification of what has been disclosed and why public access should be denied to the rest. The custodian of the record, rather than the trial court, should make the initial redaction effort.
Attorneys' Fees on Appeal
Petitioners' request for attorneys' fees on appeal is denied for the same reasons it was denied in the trial court: we find no bad faith, arbitrary or capricious action by the State. There was, however, one problem on appeal that warrants additional discussion.
When Petitioners filed the Petition for Special Action, they did nothing to assure that the tapes in question were part of the record filed with this Court. When Petitioners realized that our review of the trial court's action would necessitate our review of the videotapes, they requested that the State file copies of the tapes under seal in this Court. The State responded that it did not believe the Court of Appeals needed to review the tapes, and it refused to file copies "absent the Court's request or order to do so." Two days before the scheduled conference of the case, Petitioners filed a motion requesting that we order the State to file copies of the tapes. We granted the order, together with an order continuing conference to allow time for this Court to review the tapes prior to conference. Ordinarily, the State's refusal to file the tapes unless ordered to do so would warrant an award to Petitioners for attorneys' fees incurred in obtaining the order. There is no such award here, however, because Petitioners' request to supplement the record with copies of the tapes was so untimely that we do not fault the State for requiring court intervention before it complied with the request.
Conclusion
The trial court order is affirmed regarding the surveillance camera videotape and the denial of Petitioners' application for attorneys' fees. The trial court order is reversed regarding the crime scene videotape; the State must allow Petitioners access to that tape. Petitioners' request for attorneys' fees in this Court is denied.
CONTRERAS and GERBER, JJ., concur.