SUBLETTE COUNTY RURAL HEALTH CARE DISTRICT; and David Rachich, Secretary, in his official capacity, Appellants (Defendants),

v.

Robin MILEY, Appellee (Plaintiff).

No. 96–162.

Supreme Court of Wyoming.

July 18, 1997.

Gerald R. Mason, argued, of Mason & Graham, P.C., Pinedale, Dale Aronson, Pinedale, for Appellants.

Michael J. Krampner, Todd Hambrick, argued, of Krampner & Fuller, L.L.C., Casper, for Appellee.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

THOMAS, Justice.

This case presents, as the primary issue, a novel question in Wyoming relating to the applicability of an exception from disclosure under the Wyoming Public Records Act, WYO. STAT. § 16–4–201 through 205 (1990). Sublette County Rural Health Care District and its Secretary, David Rachich (collectively District) appeal an Order of the district court that required the District to disclose to Robin Miley (Miley) "the year end financial reports for 1992, 1993, 1994, and 1995 submitted to Sublette County Rural Health Care District Board by Dr. Tom Johnston in relation to the Pinedale Medical Clinic and the year end financial reports submitted by Dr. Ron Glas for 1994 and 1995 * * *." Doctors Johnston and Glas were the lessees of a medical clinic building in Pinedale owned by the District, although no rental payment was required. In addition, the District agreed to make monthly payments of a fixed amount to the doctors, who managed the clinic on behalf of the District. The doctors also charged fees to the public for services provided at the clinic. The District contended that the documents sought by Miley were exempt from disclosure pursuant to the provisions of WYO. STAT. § 16–4–203(d)(v) (1990). The district court ruled against the District and ordered disclosure. We hold that the documents sought are exempt under the statute, and the Order entered in the district court is reversed.

In the Brief of Appellants, the issues are stated in this way:

I. Did the trial court err in its factual determinations that disclosure of the requested information would not impair the Appellants' ability to obtain necessary information in the future nor cause substantial harm to the competitive position of Dr. Johnston and Dr. Glas?

II. Did the trial court err in its conclusion of law that the information sought

does not fall within the statutory exception?

Miley, in the Brief of the Appellee, asserts that the only issue is:

1.  Are periodic financial reports of a publicly owned health clinic, operated by a doctor who is not an employee, excepted from public inspection and copying under W.S. § 16–4–203(d)(v) as trade secrets, privileged information or confidential commercial or financial data?

Appellant's Reply Brief sets forth "New Issues Raised By The Brief Of Appellee," which are said to be:

I.  Whether trade secrets and privileged information are different from confidential information.

III[sic]. Whether the doctors' obligations of disclosure are voluntary.

III.  Whether appellee can now attack the affidavit testimony.

IV.  Whether appellee correctly cites persuasive law.

V.  Whether the district subsidizes the doctors.

The District owns a medical clinic building in Pinedale. The clinic has been leased on an annual basis to Dr. Johnston since 1992, and in 1994 and 1995 a similar lease was made with Dr. Glas. The purpose of these leases is to provide for the operation of a medical facility, and under the contracts, the District agreed to rent the building for no charge, and to pay Dr. Johnston and Dr. Glas a monthly stipend in consideration for their services. In addition to the stipend, Dr. Johnston and Dr. Glas charge patients for services that are furnished. The doctors, from the remuneration paid by the District and the fees they earn from the furnishing of medical services, hire their employees, purchase supplies, obtain insurance, and generally provide everything that is necessary to make twenty-four hour a day, seven days a week medical services available to the public in Pinedale. Each contract between the District and the doctors provided that the doctors would retain all revenues generated through their billings as their sole and exclusive property.

The doctors have provided information about the income and expenses from the operation of the clinic to the District. This is the information that Miley sought to have disclosed, and as to which the District took the position that it was exempt from disclosure. Affidavits by the doctors establish that public disclosure of the information is objectionable to them and would cause them to withhold that information from the District. The affidavits also assert that disclosure of the information would place them at a competitive disadvantage with other physicians who are not required to make such a disclosure and would adversely affect staff morale by revealing their salaries and benefit packages to the public.

On January 24, 1996, Miley requested the District to furnish copies of Dr. Johnston's financial reports for the years 1992 through 1995, and also Dr. Glas' financial reports for the years 1994 and 1995. Miley's request was made pursuant to the Wyoming Public Records Act, and the District, through its custodian, denied the right to inspect the documents and denied copies, advising Miley that the disclosure of the reports would "impair the District's ability to obtain necessary information in the future and could cause substantial harm to the competitive position of the affected individuals." The District relied upon the exception articulated in WYO. STAT. § 16–4–203(d)(v) which provides:

(d) The custodian shall deny the right of inspection of the following records, unless otherwise provided by law:

\* \* \* \* \* \*

(v) Trade secrets, privileged information and confidential commercial, financial, geological or geophysical data furnished by or obtained from any person;

The denial of the information was followed by the filing of a Complaint and Petition for Access to Records by Miley. The matter was submitted to the district court on the affidavits of the doctors together with the pleadings and briefs of the parties. On May 20, 1996, the trial court entered its Order finding that the request of financial information did not fall within the exception to the Wyoming Public Records Act and ordered

production of the requested documents. This appeal is taken from that Order.

We previously have determined that the Wyoming Public Records Act and the Federal Freedom Of Information Act (FOIA), 5 U.S.C. § 552, have a common objective, which is that disclosure, not secrecy, should prevail. *Sheridan Newspapers, Inc., v. City of Sheridan,* 660 P.2d 785, 793 (Wyo.1983); *Laramie River Conservation Council v. Dinger,* 567 P.2d 731, 733 (Wyo.1977). The implementation of that goal is provided by affording a liberal interpretation to the Wyoming Public Records Act and construing its exceptions narrowly. *Sheridan Newspapers,* 660 P.2d at 794. In *Houghton v. Franscell,* 870 P.2d 1050, 1056 (Wyo.1994), we held the act requires disclosure of physician recruitment contracts, and those contracts were not hospital records under the exception articulated in Wyo. Stat. § 16–4–203(d)(vii) (1990). We also refused to permit a police department to maintain the secrecy of certain categories of records from the public by the simple proclamation that they were for law enforcement or prosecution purposes under Wyo. Stat. § 9–9–103 (1977), the predecessor of Wyo. Stat. § 16–4–203(d)(i). *Sheridan Newspapers,* 660 P.2d at 794. In *Laramie River Conservation Council,* 567 P.2d at 732, we stated that we will afford scrutiny to any agency memos to determine their status under what now is Wyo. Stat. § 16–4–203(d)(v) (formerly Wyo. Stat. § 9–692.3(b)(v) (Supp. 1975)).

We find our statutory language to be clear and unambiguous. We could resolve this case under the application of our general rule that we look to the ordinary and obvious meaning of a statute when the language is unambiguous. *Parker Land and Cattle Co. v. Wyoming Game and Fish Com'n,* 845 P.2d 1040, 1042 (Wyo.1993). The language encompassing this exception from disclosure, provided in Wyo. Stat. § 16–4–203(d)(v) is quite parallel to a similar exception in the FOIA, 5 U.S.C. § 552(b)(4) (1994), which provides for the exception in this way:

(b) This section does not apply to matters that are—

\*      \*      \*      \*      \*      \*

(4) trade secrets and commercial or financial information obtained from a person and privileged or confidential;

Because we have noted the parallel language of our statute and the federal statute, it is appropriate also to examine persuasive authority, particularly pertinent federal cases.

We perceive a dual rationale for this exception, as articulated in *National Parks and Conservation Ass'n v. Morton,* 498 F.2d 765 (D.C.Cir.1974) (addressing the commercial and financial exception found in the FOIA). The exception serves to encourage cooperation on the part of those who otherwise could not be required to provide information to a governmental agency, and it also serves to protect the rights of those who are required to provide such information. A similar rationale is found in *Freedom Newspapers, Inc. v. Denver and Rio Grande R. Co.,* 731 P.2d 740, 743 (Colo.App.1986) (interpreting the Colorado Open Records Act exception that encompasses identical language to the Wyoming's Public Records Act).

In *National Parks and Conservation Ass'n,* a two factor test was articulated for determining the confidentiality of commercial or financial matters. Under that case, to fit within this exception to the FOIA, such matters must be likely either: (1) to impair the government's future ability to obtain necessary information; or (2) to cause substantial harm to the competitive position of the persons providing the information. *National Parks,* 498 F.2d at 770. This test has received wide spread acceptance outside the District of Columbia Circuit. *Critical Mass Energy Project v. Nuclear Regulatory Com'n,* 975 F.2d 871, 876–77 (D.C.Cir.1992), *cert. denied,* 507 U.S. 984, 113 S.Ct. 1579, 123 L.Ed.2d 147 (Dist.Col.1993) (listing the jurisdictions that have adopted *National Parks* ).

In *Critical Mass,* the District of Columbia Circuit, en banc, announced that the confidential financial and commercial exception would be determined by whether the information was compelled by the government or submitted voluntarily. Compelled information still is to be examined under the *National Parks* criteria. Voluntary information, however, will be considered "confidential" if it is of a "kind that would customarily not be released to the public by the person from

whom it was obtained." *Critical Mass*, 975 F.2d at 879.

In this instance, we adopt as the criteria for discerning confidential, commercial or financial data the test articulated in *National Parks*. While the doctors voluntarily entered into the contracts with the District, the critical information was required to be furnished under the contracts. Consequently, the *National Parks* rule is a better fit for these circumstances than the *Critical Mass* rule. Furthermore, if the information had been furnished as a completely voluntary submission, the first test under the two part criteria of *National Parks* would furnish an adequate basis for a determination of confidentiality. We understand *National Parks* also to be a better fit with our articulated policy of a preference for disclosure because the rule as it has been applied around the country seems to be more restrictive of exceptions than the rule adopted in *Critical Mass. See International Broth. of Elec. v. Denver Metropolitan Major League Baseball Stadium Dist.*, 880 P.2d 160, 166 (Colo.App. 1994).

Our application of the *National Parks* criteria to these circumstances persuades us that disclosure of the doctors' financial reports would be likely to impair the future ability of the District to obtain necessary information. The doctors could not be expected to agree to turn over sensitive financial data if the District, in turn, is required by law to disseminate that information to the public. In addition, based upon the information in the record, we agree with the proposition that release of these financial reports would be likely to cause substantial harm to the competitive positions of the doctors. These rulings are supported by the information in the affidavits furnished by the doctors, which is not refuted on the record. These facts also fit the clear and unambiguous language of the Wyoming statute.

We reverse the Order entered by the district court in this case, and we remand the case for the entry of a judgment consistent with this opinion.