2002 WY 22

**Roger ALLSOP, Laramie County Sheriff, Appellant (Defendant),**

v.

**CHEYENNE NEWSPAPERS, INC., d/b/a Wyoming Tribune Eagle; and Brian K. Martin, Appellees (Plaintiffs).**

No. 00–278.

Supreme Court of Wyoming.

Feb. 8, 2002.

Representing Appellant: Peter H. Froelicher, Laramie County Attorney. Argument by Mr. Froelicher.

Representing Appellees: Bruce T. Moats, Cheyenne, WY. Argument by Mr. Moats.

Before LEHMAN, C.J., and GOLDEN, HILL, KITE, and VOIGT, JJ.

HILL, Justice.

[¶ 1]   Laramie County Sheriff Roger Allsop (Allsop) seeks review of an order of the district court that required him to disclose, to the public and press, portions of a report reviewing and evaluating the Laramie County Detention Center's (LCDC)[1] inmate suicide prevention protocols.  On the advice of counsel, Allsop refused to provide a copy of the report to Appellee, Cheyenne Newspa-

pers, Inc. (Newspaper), and Newspaper filed a complaint seeking access to the report on the basis that it is a public record.  The report is referred to as the "Cox Report" and is so named after its author.

[¶ 2]   We will affirm the district court's order.

### ISSUES

[¶ 3]   Allsop raises these issues:

I.   Did the district court err when it denied Sheriff Allsop's motion to dismiss Appellees' claim for release of part of the Cox Report?

II.   Did the district court err when it ordered Sheriff Allsop to release all but a small portion of the Cox Report to Appellees?

The Newspaper rephrases those queries:

I.   Was the district court correct in finding that Wyoming law does not require that an entire report be withheld from public scrutiny if the disclosure of only a portion of information would be contrary to the public interest[?]

II.   Was the district court correct in finding that the vast majority of the Cox report did not involve jail security procedures and only a small portion of [the] report fit within the statutory exemption to public disclosure codified at W.S. § 16–4–203(b)(i)[?]

In his reply brief, Allsop poses these additional questions:

I.   Does the language—"or any portion thereof" in Wyoming Statute § 16–4–203(a) apply to the law enforcement records exception in Wyoming Statute § 16–4–203(b)(i)?

II.   May Appellees, despite having admitted that the Cox report satisfies the first prong of the law enforcement exception in district court, now assert that the Cox report does not satisfy the first prong of the law enforcement exception?

III.   Do any of Appellees' arguments concerning the district court's unsupported

---

1.   LCDC is also referred to as the Laramie County    Jail in some quoted material.

findings in his decision letter have any merit?

### FACTS

[¶ 4] Allsop became Laramie County Sheriff on January 4, 1999. Beginning in January of 1998, LCDC experienced a significant increase in attempted inmate suicides. In the spring of 1999, two inmates succeeded in committing suicide inside LCDC. Allsop sought assistance from the National Institute of Corrections to assess LCDC's suicide protocols, with a goal of preventing inmate suicides and suicide attempts. The National Institute of Corrections provided Allsop with the expertise of Judith F. Cox for that purpose. Cox came to Cheyenne and reviewed the above-described inmate suicide events, LCDC itself, and interviewed those persons principally charged with the responsibility for inmate well-being. Allsop received a report of Cox's conclusions in the autumn of 1999.

[¶ 5] On October 5th and 18th, 1999, Newspaper asked Allsop for a copy of the report, and Allsop denied those requests. On November 5, 1999, Newspaper filed an action which resulted in this appeal. In the course of the proceedings below, the district court indicated that the Cox Report "potentially fits within [the] exemption" for law enforcement investigatory material but did not conclude that the Cox Report was an investigatory record. In addition, the district court stated that it was ". . . not prohibited from ordering partial disclosure of an investigatory record. Rather, redaction of portions where disclosure would harm the public interest is a legitimate method of both protecting the public interest and recognizing the law's emphasis on public disclosure." Based upon that reasoning, the district court denied Allsop's motion to dismiss the complaint. That motion was premised on the theory that the statute is an "all or nothing" proposition. The report was either exempt from disclosure or it was not, and a district court does not have statutory authority to excise any information from the report, the release of which might be contrary to the public interest, and then order the release of the remainder of the report.

[¶ 6] In addition, the district court denied Allsop's motion for summary judgment, which was premised on a theory that Allsop, as a matter of law, was correct in determining that it was contrary to the public interest to release the report. At that point in the proceedings, neither the district court nor Newspaper had seen the report. The district court opined that it was not possible to make a determination of that issue without first seeing the report *in camera*. Thus, the district court denied the motion for summary judgment and directed Allsop to provide a copy of the Cox Report to the court for its *in camera* review.

[¶ 7] The parties stipulated that in lieu of a trial, the district court would conduct a hearing and decide the issues posed to it based upon all material in the court file, including affidavits submitted by Allsop, the Cox Report itself, and the arguments of counsel. Newspaper, of course, favored release of the report, at least in a redacted form, on the basis that the public had a right to know if there was a need for additional staff in the sheriff's office or for additional jail facilities, as well as to evaluate election issues about taxes and the election of a sheriff. Allsop argued that release of the report was contrary to the public interest because:

1. Disclosure would have a chilling effect, discouraging law enforcement from thoroughly investigating security and/or safety problems.

2. Disclosure would reveal security procedures and deficiencies in the jail's ability to monitor inmates, thereby increasing the risk of inmate suicide and increasing the risk of aggression by inmates against other inmates or jail staff.

3. Disclosure would describe screening techniques used to assess an inmate's risk of suicide, enabling inmates to mask or hide their suicidal tendencies.

[¶ 8] The district court determined that the evidence only justified the redaction of one small portion of the report and ordered the release of the remainder. That decision was stayed pending the resolution of this appeal.

## STANDARD OF REVIEW

[¶ 9] The issues raised by Allsop require us to construe the Wyoming Public Records Act (WPRA). In interpreting statutes, our primary consideration is to determine the legislature's intent. All statutes relating to the same subject or having the same general purpose must be considered and construed in harmony. Statutory construction is a question of law, so our standard of review is *de novo*. We begin by making an inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection. We construe the statute as a whole, giving effect to every word, clause, and sentence, and we construe all parts of the statute in *pari materia*. *Wyoming Board of Outfitters and Professional Guides v. Clark*, 2001 WY 78, ¶ 12, 30 P.3d 36, ¶ 12 (2001).

[¶ 10] With specific respect to the WPRA, we have augmented that standard of review. The WPRA and the Federal Freedom of Information Act (FOIA) have a common objective, which is that disclosure, not secrecy, should prevail. Implementation of that goal is provided by affording a liberal interpretation[2] to the WPRA and construing its exceptions narrowly. *Sublette County Rural Health Care v. Miley*, 942 P.2d 1101, 1103 (Wyo.1997); *Sheridan Newspapers, Inc. v. City of Sheridan*, 660 P.2d 785, 794 (Wyo. 1983); *Laramie River Conservation Council v. Dinger*, 567 P.2d 731, 733 (Wyo.1977). Indeed, we used this language in the *Sheridan Newspapers* case to further explicate the applicable standard of review:

Given the policy of the state as announced through the Public Records Act, the custodian, in any exercise of his right to withdraw, must confine his withdrawal discretion to those areas and circumstances prescribed by this Act. Having taken this restriction into account, the custo-

dian must then employ his discretion on a selective basis rather than through the withdrawal of entire categories of public records—as was done by the chief of police in this case. Since the public policy which pertains to the Public Records Act speaks to the philosophy of disclosure, it is therefore contrary to that philosophy for the police chief to withdraw entire categories of public records—or any public records—without first addressing the issue which asks whether or not the withdrawal of *individual* [emphasis in original] records, documents, or portions thereof violates provisions of the Act. In other words, the language of the statute imposes a legislative presumption, which says that, where public records are involved, the denial of inspection is contrary to the public policy, the public interest and the competing interests of those involved. This, then, places the burden of proof upon the custodian to show that the exercise of his discretion does not run afoul of statutory limitations in any particular instance where custodial withdrawal is effected.

660 P.2d at 795–96 (footnote omitted).

[¶ 11] In *Laramie River Conservation Council*, 567 P.2d at 734, we opined that: There is a well-known expression applied to those in public office, "If you can't stand the heat, you'd better stay out of the kitchen." Confrontation has a salutary effect and causes those in positions of public responsibility to practice thoughtfulness and wisdom in their utterances and carefully weigh their decisions. Paraphrased from *Environmental Protection Agency v. Mink*,[3] supra, such disclosure acts are broadly conceived to permit access to information long shielded unnecessarily from public view and create judicially enforceable rights to secure information from possibly unwilling hands. The disclosure acts

---

**2.** "By a liberal interpretation, it is only meant that words should not be forced out of their natural meaning and should receive a fair and reasonable construction so as to obtain the objects for which a statute is designed. Liberal construction does not require that words be forced out of their natural meaning." *Thomson v. Wyoming In–Stream Flow Committee*, 651 P.2d 778, 789 (Wyo.1982); *First National Bank & Trust Company of Wyoming v. Brimmer*, 504 P.2d

1367, 1369 (Wyo.1973); and *see* 3 Norman J. Singer, Statutes and Statutory Construction §§ 58:1—58:6 (6th ed.2001).

**3.** *Environmental Protection Agency v. Mink*, 410 U.S. 73, 93 S.Ct. 827, 840–45, 35 L.Ed.2d 119 (1973) (Justices Brennan and Marshall, concurring in part and dissenting in part).

promote within the agencies affected a sensitiveness to the needs of the public and make democratic government function in a modern society. With some necessary exceptions, recognized by Wyoming's records and meetings acts, state agencies must act in a fishbowl.

[¶ 12] Moreover, we have also held that the freedom-of-the-press and due process provisions of the Federal and Wyoming constitutions guarantee a person's right to access public records, and absent a compelling State interest, the State may not exclude an entire class of records from public inspection. *Houghton v. Franscell,* 870 P.2d 1050, 1053 (Wyo.1994).

[¶ 13] It is in light of the legislative presumption of openness and in keeping with the constitutional right of access to public records that we interpret the statutory exemption at issue in this case. *Department of Transportation v. Union of Operating Engineers,* 908 P.2d 970, 972–73 (Wyo.1995).

### DISCUSSION

[¶ 14] At the outset, we deem it prudent to declare our intention to very carefully limit our review of this matter to those issues which were raised in the district court and which are fleshed out in this appeal by cogent argument and pertinent authority. We view the WPRA as a vital tool created by the legislature for the purpose of making governmental processes open and available to the citizens whom that government serves. As noted above, the predominant feature of this legislation is that public records be open to the public. In addition, the legislature has assigned to the courts the task of providing remedies, both to the public and to government, when issues under the WPRA arise.

[¶ 15] To provide context for our discussion, we set out these statutory provisions:

(v) "Public records" when not otherwise specified includes the original and copies of any paper, correspondence, form, book, photograph, photostat, film, microfilm, sound recording, map drawing or other document, regardless of physical form or characteristics that have been made by the state of Wyoming and any counties, munic-

ipalities and political subdivisions thereof and by any agencies of the state, counties, municipalities and political subdivisions thereof, or received by them in connection with the transaction of public business, except those privileged or confidential by law;

(vi) Public records shall be classified as follows:

(A) "Official public records" includes all original vouchers, receipts and other documents necessary to isolate and prove the validity of every transaction relating to the receipt, use and disposition of all public property and public income from all sources whatsoever; all agreements and contracts to which the state or any agency or subdivision thereof is a party; all fidelity, surety and performance bonds; all claims filed against the state or any agency or subdivision thereof; all records or documents required by law to be filed with or kept by any agency or the state of Wyoming; and all other documents or records determined by the records committee to be official public records;

(B) "Office files and memoranda" includes all records, correspondence, exhibits, books, booklets, drawings, maps, blank forms, or documents not defined and classified in subparagraph (A) of this subsection as official public records; all duplicate copies of official public records filed with any agency of the state or subdivision thereof; all documents and reports made for the internal administration of the office to which they pertain but not required by law to be filed or kept with the office; and all other documents or records, determined by the records committee to be office files and memoranda.

(vii) "Writings" means all books, papers, maps, photographs, cards, tapes, recordings or other documentary materials, regardless of physical form or characteristics[.]

Wyo. Stat. Ann. § 16–4–201(a) (LexisNexis 2001).

[¶ 16] The nuts and bolts provisions of the WPRA are set out in Wyo. Stat. Ann.

§§ 16–4–202 and 16–4–203(a) (LexisNexis 2001):

### § 16–4–202. Right of inspection; rules and regulations; unavailability.

(a) All public records shall be open for inspection by any person at reasonable times, except as provided in this act or as otherwise provided by law, but the official custodian of any public records may make rules and regulations with reference to the inspection of the records as is reasonably necessary for the protection of the records and the prevention of unnecessary interference with the regular discharge of the duties of the custodian or his office.

(b) If the public records requested are not in the custody or control of the person to whom application is made, the person shall forthwith notify the applicant of this fact.

(c) If the public records requested are in the custody and control of the person to whom application is made but are in active use or in storage, and therefore not available at the time an applicant asks to examine them, the custodian shall notify the applicant of this situation.

### § 16–4–203. Right of inspection; grounds for denial; access of news media; order permitting or restricting disclosure; exception.

(a) The custodian of any public records shall allow any person the right of inspection of the records or any portion thereof except on one (1) or more of the following grounds or as provided in subsection (b) or (d) of this section:

(i) The inspection would be contrary to any state statute;

(ii) The inspection would be contrary to any federal statute or regulation issued thereunder having the force and effect of law; or

(iii) The inspection is prohibited by rules promulgated by the supreme court or by the order of any court of record.

[¶ 17] The statute most directly in contention in this matter is the exception to disclosure found in Wyo. Stat. Ann. § 16–4–203(b)(i) (LexisNexis 2001):

(b) The custodian [of a public record] may deny the right of inspection of the following records, unless otherwise provided by law, on the ground that disclosure to the applicant would be contrary to the public interest:

(i) Records of investigations conducted by, or of intelligence information or security procedures of, any sheriff, county attorney, city attorney, the attorney general, the state auditor, police department or any investigatory files compiled for any other law enforcement or prosecution purposes[.]

[¶ 18] The following subsections of Wyo. Stat. Ann. § 16–4–203 set out the remedies available to one denied access to a public record:

(e) If the custodian denies access to any public record, the applicant may request a written statement of the grounds for the denial. The statement shall cite the law or regulation under which access is denied and shall be furnished to the applicant.

(f) Any person denied the right to inspect any record covered by this act may apply to the district court of the district wherein the record is found for any order directing the custodian of the record to show cause why he should not permit the inspection of the record.

(g) If, in the opinion of the official custodian of any public record, disclosure of the contents of the record would do substantial injury to the public interest, notwithstanding the fact that the record might otherwise be available to public inspection, he may apply to the district court of the district in which the record is located for an order permitting him to restrict disclosure.[4] After hearing, the court may issue an order upon a finding that disclosure would cause substantial injury to the public interest. The person seeking permission to examine the record shall have notice of the hearing served upon him in the manner provided for service of process by

---

4. Under the circumstances presented by this case (given the sheriff's public announcement about the report at a news conference) it may have been prudent for the sheriff to have initiated this process rather than putting the public and the press to that burden.

the Wyoming Rules of Civil Procedure and has the right to appear and be heard.

[¶ 19] In *Sublette County Rural Health Care,* 942 P.2d at 1103–4, we were able to refer to persuasive federal precedents construing language very similar to a parallel Wyoming exemption for a different category of material exempt from public records disclosure. In this instance, the parallel FOIA provision is considerably different:

(7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings, (B) would deprive a person of a right to a fair trial or an impartial adjudication, (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or (F) could reasonably be expected to endanger the life or physical safety of any individual[.]

5 U.S.C.A. § 552(b)(7) (West 1996).

[¶ 20] In addition, the FOIA provides: "Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b)(end). While this is now a specific statutory provision under the federal statute, it represents a legislative recognition of a construct developed by the courts to provide remedies for violations of FOIA. *Mead Data Central, Inc. v. United States Department of the Air Force,* 566 F.2d 242, 259–60 (D.C.Cir.1977). Above, we have set out Wyo. Stat. Ann. § 16–4–203(a), and at this juncture we call attention to the portion of it that provides: "The custodian of any public records shall allow any person the right of inspection of the records *or any portion thereof* except on one (1) or more of the following grounds or as provided in subsection (b) or (d) of this section: ...." (emphasis added). We do not necessarily view that phrase as a legislative mandate, or even endorsement, of redaction,[5] but neither do we view it as an implied limitation on the remedy of redaction.

[¶ 21] In the context of this analytical process, we also take note of the statutory responsibilities of a sheriff with respect to the operation of a jail: "The county sheriff or his deputy shall keep and maintain the jail in a safe and secure manner and is responsible for its operation." Wyo. Stat. Ann. § 18–6–302 (LexisNexis 2001). This statute is relied upon by both parties—by Allsop as an articulation of his very serious responsibilities with respect to LCDC and by Newspaper to demonstrate that the public has a very legitimate interest in ensuring that the sheriff carries out that statutory responsibility. In addition, to bolster its position that the public has a strong interest in knowing the manner in which a sheriff is executing the responsibilities of the office, Newspaper points to the fact that Allsop is an elected official.

**Is the Report at Issue Covered by the Exemption in Wyo. Stat. Ann. § 16–4–203(b)(i)?**

[¶ 22] Allsop contends that the Cox Report is an "investigation," "intelligence information," or "security procedures" of a sheriff and, hence, exempt from disclosure so long as the sheriff demonstrates that its disclosure would be contrary to the public interest. Newspaper contends that it is a "report," "assessment," "a review and critique," or

---

5. "Redaction" is also referred to in various authorities as excision, deletion, alteration, expungement, etc. For purposes of this specific

discussion, we conclude that all of those terms refer to the same basic process.

some other similarly denominated document, but it is none of the things made discretionarily exempt under the statute at issue. In his press release announcing that the report existed, Allsop described it as follows: "The purpose for this request [the study by Cox] was to investigate, analyze, and evaluate the existing system [suicide prevention protocols] for the Sheriff." We are mindful that labeling of a document does not make it so. *Sheridan Newspapers*, 660 P.2d at 802 (Rooney, C.J., and Raper, J. concurring in part and dissenting in part). Here, we perceive the record in the district court to reflect that the parties agreed that the exemption was applicable, and the only meaningful contest was whether Allsop produced evidence to demonstrate that its disclosure was contrary to the public interest.

[¶ 23] The following comments are intended as guidance in the resolution of future cases analogous to the instant matter, but we do not offer them up as bright-line rules. We view the use of the terms "investigation," "intelligence information," and "security procedures" to be words used with specific reference to law enforcement and/or to law enforcement and prosecution purposes. Hence, in construing their meaning in a controversy such as this, we would not look to the most general meaning of those terms and phrases, but rather, would look to their meaning in the context of this statute and we would do so *a fortiori* in view of the liberal construction rules applicable to these statutes. *See generally*, Kristine Cordier Karnezis, Annotation, *Validity, Construction, and Application of Statutory Provisions Relating to Public Access to Police Records*, 82 A.L.R.3d 19 (1978 and 2001 Supp.); 37A Am.Jur.2d *Freedom of Information Acts* §§ 290–358 (1994 and 2001 Supp.); 76 C.J.S. *Records* § 111 (1994). A more definitive resolution of this weighty issue must wait for another day when the issue is more clearly raised in the trial court and the pertinent issues thoroughly briefed by the parties. The only thing that might be gained here would be to determine that the Cox Report was simply not exempt, and Newspaper is, therefore, entitled even to that portion of the report redacted by the district court. However, Newspaper did not cross appeal and challenge that

redaction. Our ultimate result is to affirm the district court's order and, thus, there is no injury to Newspaper.

[¶ 24] For these reasons, we decline to hold that the Cox Report was exempt under the governing statute, but accept for purposes of resolution of this appeal that that result is the law of this case.

## Did Allsop Demonstrate that Disclosure of the Report was Contrary to Public Interest?

[¶ 25] A significant part of the reason we opt to narrowly restrict this opinion to those issues specifically raised is that the record of the proceedings below is very limited in scope because of a stipulation between the parties. While the district court technically conducted a trial to the court, the evidence at that trial was limited to the report itself viewed *in camera*, affidavits offered to establish that disclosure of the report was contrary to the public interest, as well as limited briefing and argument of the issues by counsel for the respective parties. We do not view the record as one that lends itself to the resolution of the weighty and vital issues that underlie the superficial treatment given this case below, as well as in briefing and argument to this Court.

[¶ 26] The pertinent portions of the affidavits submitted by Allsop, in support of his burden to show it was not in the public interest to disclose the Cox Report, are set out below. The first affidavit was that of Allsop:

5) That, since January, 1998, the jail had experienced a significant increase in attempted suicides. That in the Spring of 1999, two inmates at the Laramie County Jail successfully committed suicide and that the risk of inmate suicide is an ongoing safety and security issue for the Laramie County Jail.

6) That I have personal knowledge about the Cox report and the operations of the Laramie County Jail.

7) That, in the Spring of 1999, within several months of taking over as the Laramie County Sheriff, I enlisted the services of Judith F. Cox to perform an investiga-

tion and critique of the Laramie County Jail facility staffing and its procedures including those procedures concerning the prevention of inmate suicides.

8) That Ms. Cox is affiliated with the National Institute of Corrections and is a suicide prevention expert.

9) That I enlisted the services of Ms. Cox and the National Institute of Corrections to get an honest and complete investigation into the suicide prevention system at the Laramie County Jail in order to enable me to provide the safest and most secure jail possible.

10) That Ms. Cox investigated the jail's suicide prevention system through an on site visit, by meeting with essential personnel in the Sheriff's Department and by reviewing the suicide prevention procedures at the jail.

11) That Ms. Cox provided me with a written technical report based upon her investigation into the jail and the jail's suicide prevention system.

12) That Ms. Cox's written technical report contains specific findings and recommendations concerning the physical jail building and the protocols and procedures concerning the prevention of suicides. That Ms. Cox's report lists specific shortcomings of the physical layout of the jail for preventing suicides and for providing adequate security. That Ms. Cox's report discusses the indicators which should be used to determine an inmate's risk of suicide. That Ms. Cox's report identifies the areas and the times at the jail where and when supervision of inmates could be improved.

13) That, based upon my years of experience in law enforcement, the disclosure of the investigative report prepared by Judith Cox evaluating and analyzing the Laramie County Jail's suicide prevention system would be contrary to the public interest for the following reasons: (1) disclosure of the report would cause serious harm to the safety and security of the inmates and deputies because the report

contains a list of the physical limitations of the jail building for preventing suicides, e.g. areas out of view, and because the report discusses areas and times where staffing is insufficient; (2) disclosure of the report would increase the risk of successful suicides because the report contains a list of the physical limitations of the jail building for preventing suicides and because it discusses the behavioral indicators used to determine suicide risk, both of which could be used by inmates to avoid suicide detection; and (3) disclosure of the report will deter other sheriffs and law enforcement officials from obtaining honest critiques of their security operations because they will know such records will be subject to disclosure.[6]

[¶ 27]  The second affidavit offered by Allsop was from Captain August Wenzel of the Laramie County Sheriff's Office who was in charge of the day-to-day operation of LCDC:

4) That, among other duties, I am charged with maintaining the Laramie County Jail in a safe and secure manner and with operating the Laramie County Jail.

5) That I have reviewed the Cox Report and have personal knowledge about the operations of the Laramie County Jail.

6) That, based upon my years as a detention officer at the Laramie County Jail and as the Chief of Detention operations at the Laramie County Jail, the disclosure of the Cox Report would be contrary to the public interest for the following reasons:

(a) It would cause serious harm to the safety and security of the inmates and deputies. The information contained in the Cox Report—a list of the physical limitations of the jail building for preventing suicides and a discussion of the areas and times where staffing is insufficient—would likely be used by inmates to successfully commit suicide or other illegal acts.

(b) It would increase the risk of successful suicides because the report con-

---

6.  We do not give any credence to such an argument or theory.  Public scrutiny could never be a pretext for nonfeasance, misfeasance, or malfea-

sance.  We trust that Appellant places no credence in it either.

tains a list of the physical limitations of the jail building and because it discusses the behavioral indicators used to determine suicide risk. That information would be used by inmates to avoid suicide detection.

[¶ 28] The third affidavit offered by Allsop was from Michael Sandifer, who serves as the mental health coordinator at LCDC:

4) That the Cox Report points out problems in the design, building construction, security structure and surveillance capability of areas of the Laramie County Jail. That, the information contained in the Cox Report could serve as a how-to-training-manual for anyone desiring to commit suicide or perform other breaches of security in the jail.

5) That the Cox report exposes weaknesses in staffing and security patterns which could be useful to others who desire to plan an escape or otherwise compromise security of the facility thereby placing staff and the safety of the facility at risk.

[¶ 29] As noted above, Allsop bore the burden of demonstrating that disclosure of the Cox Report would be contrary to the public interest. The affidavits set out above are largely conclusory and contain factually unsubstantiated expressions of opinion. They obviously were of little assistance to the district court, and they are of little assistance to this Court in resolving this appeal. Allsop contends that the only evidence in the record that goes to that question is the evidence offered by Allsop and, therefore, the district court was bound to find in his favor and this Court is bound to reverse the district court's final order. We do not agree. A crucial piece of evidence is the Cox Report itself. The role of the district court was to examine that report, all of the other materials in the record and the applicable law, and then make a judgment as to whether Allsop was correct in his conclusion that disclosure of the report was contrary to the public interest. It was also incumbent upon the district court to employ logic and reason in that process. We conclude, based upon the record extant, that the district court could properly conclude that, with redaction, disclosure of the report would not be contrary to the public interest.

**Authority of District Court to Redact**

[¶ 30] Allsop contends that the district court does not have authority to redact a public record, such as the Cox Report, so as to render it subject to disclosure. Allsop maintains that the governing statutes do not provide for such a remedy. Actually, the statutes do not specifically provide for any particular remedies. It most certainly would run afoul of the applicable principles of statutory construction to conclude that the passage of the WPRA was for naught because the legislature failed to provide for specific sorts of remedies. We feel safe in concluding that the legislature intended for the courts to use those traditional judicial remedies that are available, as well as to fashion new ones that suit the circumstances which the statute was intended to remediate. *Sheridan Newspapers,* 660 P.2d at 798–99. Redaction is one such remedy. We tacitly approved of its use in *Sheridan Newspapers,* though the precise issue raised here was not raised in that case. *Also see Department of Transportation,* 908 P.2d at 972 n. 5. We take this opportunity to hold that a district court may use redaction as one of the remedies to vindicate the public's interests in access to public records. That redaction is an appropriate tool to be used in circumstances such as these is well established in case law, as well as in statutes. *See Providence Journal Company v. Convention Center Authority,* 774 A.2d 40 (R.I.2001); *Bardes v. Todd,* 139 Ohio App.3d 938, 746 N.E.2d 229, 234 (2000); *Press of Atlantic City v. Ocean County Joint Insurance Fund,* 337 N.J.Super. 480, 767 A.2d 533, 539 (2000); *Cowles Publishing Company v. Spokane Police Department,* 139 Wash.2d 472, 987 P.2d 620, 622–23 (1999); *KPNX TV v. Superior Court in and for County of Yuma,* 183 Ariz. 589, 905 P.2d 598, 603 (1995); 37A Am.Jur.2d *Freedom of Information Acts* § 576 (1994); and 76 C.J.S. Records § 124 (1994). Although the parallel federal statute specifically provides for it, that statutory provision represents a legislative adoption of a court created remedy.

**CONCLUSION**

[¶ 31] The district court did not err in denying Allsop's motion to dismiss Newspa-

per's complaint, nor did the district court err in redacting and then ordering disclosure of the Cox Report. For the reasons set out above, the order of the district court is affirmed.

GOLDEN, J., files a dissenting opinion.

GOLDEN, J., dissenting.

[¶ 32] Allsop, acting in his official capacity as custodian of the Cox Report, determined that the report was exempt from public disclosure under Wyo. Stat. Ann. § 16–4–203(b)(i). As the majority opinion points out, Newspaper agrees that the Cox Report falls within that exemption.[7] The main issue argued below was whether the Cox Report could be withheld because its disclosure would be contrary to the public interest. The district court ordered the disclosure of a redacted version of the Cox Report. Thus, implicitly, the district court found that the disclosure of the Cox Report would be contrary to the public interest unless certain portions of the report were redacted.[8] The correct narrow question posed in this appeal, then, concerns the statutory authority of the district court to order Allsop to release the Cox Report in redacted form.[9] Because I do not agree that the statutory language at issue grants the district court authority to order redaction, I must respectfully dissent.

[¶ 33] In addition to § 16–4–203(b)(i), Wyo. Stat. Ann., § 16–4–203(f) (LexisNexis 2001) is also pertinent to this appeal. Subsection 203(f) states:

> Any person denied the right to inspect any record covered by this act may apply to the district court of the district wherein the record is found for any order directing the custodian of the record to show cause why he should not permit the inspection of the record.

When read as a whole, the statutory language is unambiguous. The legislature has determined that the custodian makes the initial determination regarding the exempt status of a record, subject only to having to explain his reasoning to the district court via a show cause proceeding. If the custodian successfully bears his burden of showing that an exemption applies to a given record and that the release of the record would be contrary to the public interest, that is the end of the judicial inquiry. The statutes extend no further authority to the district court.

[¶ 34] I fully agree that the purpose of the Wyoming Public Records Act (WPRA) is to allow disclosure of information. However,

---

7. Despite the declared intention of the majority opinion to "very carefully limit our review of this matter to those issues which were raised in the district court," the majority opinion immediately proceeds to offer an entire section related to whether the Cox Report falls within the claimed exemption. The majority opinion presents the section as "guidance" for future cases. I question both the wisdom and the result of this "guidance."

8. The majority opinion offers a section regarding whether Allsop adequately demonstrated that disclosure of the Cox Report was contrary to the public interest. In my view, that issue is not properly before this Court on appeal. The correct narrow issue raised by Appellant Allsop concerns the authority of the district court to order redaction. Having said that, I will, nevertheless, briefly comment on the serious deficiencies that exist in the statute regarding judicial review of the determination whether disclosure of an exempted record is or is not contrary to the public interest. In the pertinent statutory provisions, Wyo. Stat. Ann. §§ 16–4–203(e) and (f), the legislature has not provided the district court, before which the show cause proceeding is conducted, any guidance regarding the various factors, and

the weight properly to be given to each, to consider when reviewing the custodian's showing that disclosure would be contrary to the public interest. In the instant case, Allsop showed cause, presenting evidence in the form of affidavits of undisputed experts on jail security operations. Newspaper did not present evidence contradicting Allsop's showing. Notwithstanding Allsop's showing, the district court, without evidentiary support, concluded that disclosure would not be contrary to the public interest. It is elementary that a court may not substitute its own factually unsupported opinion for the factually supported showing of a party litigant. In the absence of legislatively declared factors that inform judicial review of "public interest" determinations, the risk of arbitrary and capricious judicial decision-making is unacceptably high.

9. This Court has never been faced with the issue of whether a custodian of a record is required under the WPRA to redact information in an individual record. *Sheridan Newspapers Inc. v. City of Sheridan,* 660 P.2d 785 (Wyo.1983), does contain language regarding redaction of information within individual records. Such language must properly be classified as dicta, as such issue was not properly before the *Sheridan* Court.

the legislature did include several exemptions to disclosure. While these exemptions must be interpreted narrowly, this Court does not have authority to move beyond the language selected by the Legislature. As this Court stated in *Allied–Signal, Inc. v. Wyoming State Bd. of Equalization*, 813 P.2d 214 (Wyo.1991):

> Legislative intent must be ascertained initially and primarily from the words used in the statute. *Phillips v. Duro–Last Roofing, Inc.*, 806 P.2d 834 (Wyo.1991); *Wyoming Workers' Comp. v. Halstead*, 795 P.2d 760 (Wyo.1990); *Halliburton Co. v. McAdams, Roux & Associates, Inc.*, 773 P.2d 153 (Wyo.1989); *Dept. of Revenue and Taxation of State of Wyo. v. Hamilton*, 743 P.2d 877 (Wyo.1987); *Huber v. City of Casper*, 727 P.2d 1002 (Wyo.1986); *In re Adoption of MM*, 652 P.2d 974 (Wyo.1982); *Oroz v. Hayes*, 598 P.2d 432 (Wyo.1979); *Seyfang v. Board of Trustees of Washakie County School Dist. No. 1*, 563 P.2d 1376 (Wyo.1977). When the words used are clear and unambiguous, a court risks an impermissible substitution of its own views, or those of others, for the intent of the legislature if any effort is made to interpret or construe statutes on any basis other than the language invoked by the legislature. Our precedent demonstrates that this rule also is an absolute. If the language selected by the legislature is sufficiently definitive, that language establishes the rule of law. Any additional construction can be resorted to only if the wording is ambiguous or unclear to the point of demonstrating obscurity with respect to the legislative purpose or mandate. *Blue Cross Ass'n v. Harris*, 664 F.2d 806 (10th Cir.1981); *Johnson v. Statewide Collections, Inc.*, 778 P.2d 93 (Wyo.1989); *Wyoming Insurance Dept. v. Avemco Ins. Co.*, 726 P.2d 507 (Wyo.1986); *Campbell v. State*, 709 P.2d 425 (Wyo.1985); *[State Board of Equalization v.] Tenneco [Oil Co.*, 694 P.2d 97 (Wyo.1985)]. This inhibition upon statutory construction offers assurance that the legislative efforts and determinations of elected representatives will be made effective without judicial adjustment or gloss.

*Id.* at 219–20. This is a perfect example of a case in which judicial restraint is appropriate in order to prevent the addition of any "judicial adjustment or gloss" to the WPRA.

[¶ 35] The pertinent language in the exemption is the beginning language stating: "[t]he custodian may deny the right of inspection of the following records." Wyo. Stat. Ann. § 16–4–203(b) (LexisNexis 2001). Clearly, the initial decision regarding access to records belongs to the custodian of the records. Any person denied the right to inspect any public record because the custodian thereof has invoked an exemption is limited to asking the district court for an "order directing the custodian of the record to show cause why he should not permit the inspection of the record." Wyo. Stat. Ann. § 16–4–203(f) (LexisNexis 2001). Both sections speak only of "the record," not portions thereof, and the district court's jurisdiction is specifically limited to a show cause proceeding. Thus, the only function of the district court is reviewing the reasons given by the custodian for not releasing the record. If the custodian adequately shows cause why the record should not be released pursuant to the provisions of the WPRA, that is the end of the judicial inquiry.

[¶ 36] This reading of the statute becomes even clearer when the WPRA is compared with the Federal Freedom of Information Act (FOIA). As the majority opinion points out, the FOIA contains specific provisions requiring redaction. At the end of the section dealing with exemptions there is a general statement mandating that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C.A. § 552(b) (West 1996). Under the section authorizing judicial review, the statutory language specifically states that the district court "shall determine the matter de novo, and may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld." 5 U.S.C.A. § 552(a)(4)(B) (West 1996). The WPRA does not contain any such language.

[¶ 37] The majority opinion seems to suggest that since the FOIA contains such language, we should read such language into the WPRA by analogy. The WPRA, however, contains no such analogous language.

> There are ... rules of construction which eventually force us into a corner from which we have little hope of escape. The omission of words from a statute must be considered intentional on the part of the legislature. *State v. Reese*, 1974, 12 Wash. App. 407, 529 P.2d 1119. Words may not be supplied in a statute where the statute is intelligible without the addition of the alleged omission. *Ward v. Yoder*, Wyo. 1960, 355 P.2d 371, 376, reh. den., 357 P.2d 180; *Montoya v. McManus*, 1961, 68 N.M. 381, 362 P.2d 771. Words may not be inserted in a statutory provision under the guise of interpretation. *Kirkwood v. Bank of America Nat. Trust & Savings Ass'n*, 1954, 43 Cal.2d 333, 273 P.2d 532. The Supreme Court will not read into laws what is not there. *Durante v. Consumers Filling Station Company of Cheyenne*, 1953, 71 Wyo. 271, 299, 257 P.2d 347, 356; *Cook v. Hill*, 1960, 224 Or. 565, 356 P.2d 1067. This court will not supply omissions in a statute and redress is with the legislature. *Lo Sasso v. Braun*, Wyo.1963, 386 P.2d 630, 631–632. We are alerted by all this to the result that it is just as important to recognize what a statute does not say as it is to recognize what it does say.

*Matter of Voss' Adoption*, 550 P.2d 481, 485 (Wyo.1976).

[¶ 38] The above-quoted FOIA language regarding redaction was added to the FOIA by amendment in 1974. The Wyoming legislature has never added the same or even analogous language to the WPRA. The omission of such language, especially in light of the presence of specific language in the FOIA, should not be treated by this Court as an oversight by the Wyoming legislature. The legislature has never explicitly given the courts the power to order the release of portions of records, and such authority should not now be read into the WPRA.

[¶ 39] The majority opinion claims that the addition of the language requiring redaction now found in the FOIA was simply a codification of a judicially created remedy. I do not believe this to be an accurate statement. In a decision issued before the 1974 amendments to the FOIA adding the redaction requirements, the United States Supreme Court determined that judicial inspection and redaction was not authorized under at least one exemption in the FOIA. In *EPA v. Mink*, 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973), certain members of Congress were attempting to gain access to specific Executive Branch records concerning a scheduled underground nuclear test. Access to these documents was denied based upon two distinct exemptions. The first exemption claimed was an exemption for documents "specifically required by Executive order to be kept secret in the interest of the national defense or foreign policy." *Id.* at 80, 93 S.Ct. at 833. The second exemption claimed was an exemption for "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." [10] *Id.* at 85 n. 11, 93 S.Ct. at 835 n. 11. The District Court found that the documents at issue were exempt from compelled disclosure for the reasons given. The Court of Appeals reversed, holding that an inquiry into the appropriateness of redaction was required for records in both categories of exemptions and any information falling outside the stated exemption should be released.

[¶ 40] The United States Supreme Court analyzed each exemption separately. Re-

---

10. The WPRA has a substantially similar exemption, Wyo. Stat. Ann. § 16–4–203(b)(v). It is interesting that the very reason for this exemption in the FOIA is to encourage the free and open exchange of ideas, opinions and critiques between and within government agencies during the process of deliberation and policy making. The U.S. Congress recognized that the desired openness and frankness of discussion within the government might not be achievable if all records thereof are open to public scrutiny. *See Mink* at 87, 93 S.Ct. at 836. Footnote six of the majority opinion seems to disavow this reasoning. Because of the requirement under the WPRA that a record can be withheld only if it fits within a delineated exemption **and** its disclosure would be contrary to the public interest, the disavowal of the public policy behind the exemption calls the application of this exemption needlessly into question.

garding the first exemption, the Supreme Court held that the district court did not have authority to inspect or order redaction of any document falling within the first exemption. The Supreme Court reasoned quite simply that the statutory language at issue only authorized the district court to determine if the record was subject to an appropriate Executive order. Evidence was presented that certain documents were subject to an appropriate Executive order, leading the Supreme Court to conclude that, with regards to these documents, the "petitioners had met their burden of demonstrating that the documents were entitled to protection under [the pertinent exemption], and the duty of the District Court ... was therefore at an end." *Id.* at 84, 93 S.Ct. at 834–35.

[¶ 41] While acknowledging that there may be room for criticism of the resulting limitation of judicial review, the Supreme Court deferred to what it considered to be Congressional intent as evidenced by the pertinent statutory language. As Justice Stewart stated in his concurring opinion, Congress "has built into the Freedom of Information Act an exemption that provides no means to question an Executive decision to stamp a document 'secret,' however cynical, myopic, or even corrupt that decision might have been. .... Congress chose, instead, to decree blind acceptance of Executive fiat." *Id.* at 95, 93 S.Ct. at 840.

[¶ 42] Regarding the second exemption claimed, the Supreme Court again analyzed the precise statutory language used by Congress. On the issue of redaction, the Supreme Court focused on the language of the statute that allowed parties to receive records under the same rules as if they were in litigation with the custodial agency. The Supreme Court interpreted this statutory language to mean that Congress expected the rules of discovery to be applied, at least "by way of rough analogies." *Id.* at 86, 93 S.Ct. at 835. In discovery, upon a claim of privilege, severing information from documents is common and "courts often [are] required to examine the disputed document *in camera,* in order to determine which should be turned over or withheld." *Id.* at 88, 93 S.Ct. at 836. The Supreme Court reasoned that Congress was expected to know of this common practice and therefore judicial inspection and redaction was anticipated. Thus, any record for which this particular exemption is claimed potentially could be subjected to judicial *in camera* review and judicially mandated redaction and disclosure.

[¶ 43] In *Mink,* the United States Supreme Court stayed true to the language employed by Congress in the FOIA. It did not judicially create a remedy of inspection and redaction that had no basis in the language of the FOIA. In fact, the Supreme Court specifically rejected the suggestion that such a remedy was implicit in the FOIA. Congress amended the FOIA the year after *Mink* was decided to include provisions for redaction for records sought to be withheld under all listed exemptions. Given this background, I fail to see how the pertinent Congressional amendment to the FOIA constituted "a legislative adoption of a court created remedy" as stated in the majority opinion.

[¶ 44] I find the reasoning in *Mink* to be very persuasive. The doctrine of separation of powers mandates that we apply the law as written. The exemption at issue provides for the custodian to make the decision regarding disclosure of a record. The custodian is not required under the terms of the pertinent exemption to examine the record and segregate exempt portions from nonexempt portions. In terms of judicial review, the Wyoming legislature specifically has limited judicial review of the claim of an exemption under the WPRA to making a decision under an order to show cause. There is no legislative authority for the district court to order redaction of portions of an otherwise exempt record. This Court should restrain its statutory interpretation and abide by the dictates of the legislature. Questions regarding the wisdom of the limits of such judicial review are for the legislature, not this Court, to decide.

[¶ 45] In the final analysis the Legislature must answer to an informed, and perhaps ultimately aroused, public opinion for its action. We may not substitute our judgment for its own. The forum for the correction of

ill-considered legislation is a responsive legislature.