# THE SUPREME COURT, STATE OF WYOMING

# 2023 WY 77

**APRIL TERM, A.D. 2023**

**August 8, 2023**

JESSICA GATES,

Appellant
(Plaintiff),

v.

"MEMORIAL HOSPITAL OF CONVERSE
COUNTY - ADVANCED MEDICINE.
HOMETOWN CARE", by and through the
BOARD OF TRUSTEES OF THE
MEMORIAL HOSPITAL OF CONVERSE
COUNTY,

Appellee
(Defendant).

S-22-0286

*Appeal from the District Court of Converse County*
*The Honorable F. Scott Peasley, Judge*

*Representing Appellant:*
C. John Cotton, Cotton Law Office, PC, Gillette, Wyoming.

*Representing Appellee:*
Billie LM Addleman, Christine L. Jordan, and Tyson R. Woodford of Hirst Applegate, LLP, Cheyenne, Wyoming. Argument by Mr. Woodford.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY and FENN, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FENN, Justice.**

[¶1]   Jessica Gates appeals from the district court's summary judgment order which required Memorial Hospital of Converse County (MHCC) to produce certain records she requested under the Wyoming Public Records Act (WPRA or the Act), but which also imposed a protective order on those documents.  Ms. Gates also appeals the district court's denial of her summary judgment motion related to the production of documents involving a settlement between MHCC and a patient (MB settlement).  We reverse and remand.

## ISSUES

[¶2]   Ms. Gates raises two issues, which we rephrase as follows:

> I.   Did the district court err by denying Ms. Gates's request to order MHCC to produce documents relating to the MB settlement?
>
> II.   Does the WPRA allow a district court to order public records to be produced subject to a protective order?

## FACTS

[¶3]   In a separate action, Ms. Gates and her husband, acting as guardians and next friends for their minor child, L.G., filed a malpractice action against MHCC.  Instead of requesting the information through discovery in that case, Ms. Gates sent MHCC's counsel a letter containing a "FOIA[1]/Wyoming Public Records Act (WPRA) Request" in July 2021.  Among other things, this letter requested the inspection and production of the following documents:

> **IV.   Governmental Claims for Medical Malpractice – "all claims filed against a governmental entity":**
>
> A.   All Governmental Claims for Medical Malpractice filed against Memorial Hospital of Converse County (or any of its officers, agents, representatives or employees) during the time period from January 1, 2014 to date.
>
> B.   All Governmental Claims for Medical Malpractice pertaining to Jonathan Grosdidier, M.D., FACS, regardless of time period.

---

[1] FOIA refers to the federal Freedom of Information Act, 5 U.S.C. § 552 (2018).

1

C. All Governmental Claims for Medical Malpractice pertaining to Dennis Yutani, M.D. and/or the radiology department, regardless of the time period.

D. All Governmental Claims for Medical Malpractice pertaining to the conduct of MHCC nursing staff, regardless of the time period.

V. **Settlement/Payment Of/On Claims for Medical Malpractice – "all . . . documents . . . relating to the receipt, use, and disposition of all public property and public income."**

A. All documents related to the settlement/payment of/on claims for medical malpractice against Memorial Hospital of Converse County (or any of its officers, agents, representatives or employees) during the time period from January 1, 2014 to date.

B. All documents related to the settlement/payment of/on claims for medical malpractice pertaining to Jonathan Grosdidier, M.D., FACS, regardless of the time period.

C. All documents related to the settlement/payment of/on claims for medical malpractice pertaining to Dennis Yutani, M.D. and/or the radiology department regardless of the time period.

D. All documents related to the settlement/payment of/on claims for medical malpractice pertaining to the conduct of MHCC nursing staff, regardless of the time period.

In response to her request to produce Governmental Claims for medical malpractice, MHCC provided documents relating to two claims, one dated July 21, 2015, and another dated February 8, 2021. In response to her request for documents relating to the settlement or payment of claims for medical malpractice involving the receipt, use, and dispositions of public property and public income, MHCC informed Ms. Gates it would not be producing any other settlement agreements between MHCC and any other person or party for "several reasons." MHCC claimed: "First, most of the agreements were entered into by an insurance carrier not qualifying as a document that needs to be produced under the Act. Second, the settlement agreements included a confidentiality provision." The letter did not indicate how many other settlement agreements MHCC was withholding.

2

[¶4]    In September 2021, Ms. Gates's counsel sent MHCC's counsel a letter stating he was aware of another claim filed by a patient, MB, which had not been provided by the hospital, that purportedly involved the use of public funds.  MHCC's counsel had previously informed Ms. Gates's counsel the hospital was not going to produce documents relating to the MB settlement because it had not been filed as a formal Governmental Claim.  Ms. Gates asked MHCC to reconsider its position and produce the MB settlement because it was a claim filed against a public entity or it was an agreement or contract to which a governmental entity was a party.

[¶5]    When the parties still could not resolve their disagreement about whether these documents were subject to production under the WPRA, Ms. Gates filed a request under Wyoming Statutes §§ 16-4-201 et seq. (LexisNexis 2021) asking the district court to compel MHCC to produce these records.  In its answer, MHCC asserted the requested documents either did not fall under the WPRA or were subject to confidentiality agreements.

[¶6]    Ms. Gates filed for summary judgment on the application of the WPRA.  She argued the MB settlement fell within the definition of a public record under the WPRA because it related to the receipt, use, and disposition of public property or income, or it was a contract or agreement to which a governmental entity was a party.  She also argued the WPRA did not contain a provision that permits a governmental entity to selectively limit production of all agreements and contracts to which it was a party by identifying some as confidential.  Furthermore, she argued she was entitled to the settlement agreements MHCC's insurance carrier entered into on its behalf because the hospital was a party to those agreements.

[¶7]    MHCC argued the confidentiality provisions in the documents rendered them "privileged" communications that were excluded from the definition of public records under Wyoming Statute § 16-4-201(a)(v).  MHCC alleged the requested records were exempt from disclosure under Wyoming Statute § 16-4-203(d)(v)[2] or Wyoming Statute § 16-4-203(d)(vii) (LexisNexis 2021).[3]  MHCC also argued it did not have to produce the settlements entered into by its insurance carrier for two reasons: 1) MHCC was not a party to those settlement agreements, and 2) no public funds were contributed to those settlements.  MHCC claimed it did not have to produce the MB settlement because the "claim" had been settled before the filing of a notice of claim under the Wyoming Governmental Claims Act (WGCA), Wyoming Statutes §§ 1-39-101 et seq., and the WPRA only required the hospital to produce claims "filed" in compliance with the WGCA. MHCC attached the affidavit of its CEO, Matt Dammeyer, to its summary judgment response in support of its argument.  He averred three Governmental Claims had been filed

[2] This subsection exempts "Trade secrets, privileged information and confidential commercial, financial, geological or geophysical data furnished by or obtained from any person[.]"
[3] This subsection exempts "Hospital records relating to medical administration, medical staff, personnel, medical care and other medical information, whether on individual persons or groups, or whether of a general or specific classification[.]"

against the hospital since 2014: the Gates's claim, and the July 21, 2015, and February 8, 2021, claims that had been provided to Ms. Gates before this action was filed. He also averred he was aware of two other settlement agreements MHCC's insurance carrier had reached with two separate claimants (insurance carrier settlements). He opined MHCC was not a party to the insurance carrier settlements, and he stated no public funds were expended to settle those claims. Although he did not use MB's name, Mr. Dammeyer stated MHCC had settled one claim which involved the use of MHCC's funds. Mr. Dammeyer did not opine the insurance carrier settlements or the MB settlement were exempt from production under Wyoming Statute § 16-4-203(d) or that production of either the MB settlement or the insurance carrier settlements would do substantial injury to the public interest.

[¶8]    In reply, Ms. Gates argued the MB settlement was subject to production under the WPRA because it involved the use of public funds to settle a claim against a governmental entity. Ms. Gates also argued the insurance carrier settlements were subject to the WPRA because MHCC used public funds when it purchased the insurance policy, and the hospital was a party to the insurance carrier settlement agreements. Ms. Gates asserted Wyoming Statute § 16-4-203(d)(v) was inapplicable because MHCC made no showing the documents contained any trade secrets or other privileged information that would preclude disclosure. Ms. Gates further argued the settlement agreements were not protected from disclosure as medical records under Wyoming Statute § 16-4-203(d)(vii) but were instead like the physician recruitment contracts this Court ruled were subject to disclosure under the WPRA in *Houghton v. Franscell*, 870 P.2d 1050 (Wyo. 1994).

[¶9]    The district court held a hearing on the summary judgment motion in September 2022. Shortly before the hearing, MHCC submitted copies of the MB settlement and the two insurance carrier settlements to the district court for in camera review. At the hearing, MHCC did not argue the exceptions under Wyoming Statute § 16-4-203(d)(v) or (vii) applied. MHCC conceded the MB settlement was a contract between the hospital and an individual that involved the use of public funds, and Ms. Gates had "a good argument for the production of that agreement []" under the WPRA. However, it renewed its argument the WPRA only applied to filed claims, and the hospital had produced all filed claims. MHCC admitted the two insurance carrier settlements released the hospital from liability, but it again asserted those documents were not subject to release under the WPRA because no public funds were used to resolve those claims. MHCC argued the parties to those settlement agreements "had a bonafide [sic] interest in the confidentiality of the amounts paid to individual claimants[,]" and it would not violate public policy to allow the "amounts and conditions of settlements with individual consumers" to remain confidential. If the district court found the settlement agreements were public records, MHCC asked the district court to enter a protective order "so that the interests of the parties involved could have their confidentiality protected."

4

[¶10]   At the end of the hearing, the district court asked Ms. Gates's counsel if he had "any objection to defense counsel's request for a protective order for any documents that the [c]ourt believes should be disclosed?" Ms. Gates's counsel replied: "I don't have a concern about that.  And if something comes up where we think we need to use them, we would reserve the right to apply to the [c]ourt for a change in the protective order." The district court then stated it would review the records in camera to determine whether the records were privileged or confidential by law or whether the release of those records would impair or impede the hospital's ability to discharge its duties.

[¶11]   The district court issued an order in October 2022.  The district court determined Wyoming Statute § 16-4-201 referred only to filed claims.  Because MB's case was resolved prior to the filing of a notice of claim, the district court determined the MB settlement was not subject to production under the WPRA.  The district court determined the two insurance carrier settlements were subject to disclosure because the hospital was a party to those agreements.  The district court specifically found the WPRA "does not contain an exception for settlements involving or including a government entity's insurance carrier." The district court also found "[a]greements and contracts subject to the provisions of a bargained for confidentiality clause are not considered 'privileged or confidential by law.'" It further found it could "order the disclosure of information protected by a confidentiality clause when necessary and appropriate."

[¶12]   The district court recognized the public had a vital interest in information relating to malpractice claims against MHCC and its employees.  However, the district court also found "at a minimum, by making the settlement agreements confidential, the release of details of the confidential settlements may 'impair or impede the governmental entity's ability to discharge its other duties.'" It found releasing the settlements for public inspection would infringe on MHCC's ability to reconcile claims efficiently and effectively and would invoke a chilling effect on doctors, nurses, and hospital staff.  It also found litigants preferring to keep the terms of a settlement agreement private could not do so. The district court found the confidentiality clauses in the settlements did not render them per se exempt from disclosure.  However, it found "restricting disclosure to [Ms. Gates], subject to the provisions of a protective order prohibiting further disclosure, is both necessary and in the public interest." The district court ordered MHCC to produce the two insurance carrier settlements to Ms. Gates subject to a protective order that went beyond shielding the identities of the individuals and the amounts of the settlements. Among other things, the protective order limited Ms. Gates's use of the documents to the underlying medical malpractice case, restricted the individuals to whom the documents could be disclosed, and required the documents to be returned to MHCC or destroyed at the conclusion of the litigation.

[¶13]   Ms. Gates did not apply to the district court for any changes to the protective order, but she timely appealed the district court's order to this Court.

**STANDARD OF REVIEW**

[¶14]   Determination of the first issue requires us to determine whether the district court properly granted summary judgment.  We review a district court's order granting summary judgment de novo. *Matter of Phyllis V. McDill Revocable Trust*, 2022 WY 40, ¶ 16, 506 P.3d 753, 759 (Wyo. 2022) (citing *Bear Peak Res., LLC v. Peak Powder River Res., LLC*, 2017 WY 124, ¶ 10, 403 P.3d 1033, 1040 (Wyo. 2017)).

> We review a summary judgment in the same light as the district court, using the same materials and following the same standards.  We examine the record from the vantage point most favorable to the party opposing the motion, and we give that party the benefit of all favorable inferences that may fairly be drawn from the record.  A material fact is one which, if proved, would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties.

*Id.*, 506 P.3d at 759–60 (citing *Bear Peak Res., LLC*, ¶ 10, 403 P.3d at 1040) (internal citations and quotation marks omitted).

[¶15]   This case also requires us to interpret the WPRA.  "Statutory interpretation is a question of law subject to de novo review." *Solvay Chemicals, Inc. v. Wyo. Dep't of Revenue*, 2022 WY 124, ¶ 7, 517 P.3d 1146, 1149 (Wyo. 2022) (*citing Camacho v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2019 WY 92, ¶ 17, 448 P.3d 834, 840–41 (Wyo. 2019)).  Our rules of statutory interpretation are well established:

> Our goal in interpreting statutes "is to give effect to the intent of the legislature, and we 'attempt to determine the legislature's intent based primarily on the plain and ordinary meaning of the words used in the statute.'" *Fugle v. Sublette Cnty. Sch. Dist. No. 9*, 2015 WY 98, ¶ 8, 353 P.3d 732, 734 (Wyo. 2015) (quoting *Stroth v. N. Lincoln Cnty. Hosp. Dist.*, 2014 WY 81, ¶ 7, 327 P.3d 121, 125 (Wyo. 2014)).  "The paramount consideration is to determine the legislature's intent, which must be ascertained initially and primarily from the words used in the statute." *RME Petroleum Co. v. Wyo[.] Dep't of Revenue*, 2007 WY 16, ¶ 25, 150 P.3d 673, 683 (Wyo. 2007) (citing *State ex. rel. Wyo[.] Dep't of Revenue v. Union Pac. R. Co.*, 2003 WY 54, ¶ 12, 67 P.3d 1176, 1182 (Wyo. 2003)).  "Where legislative intent is discernible a court should give effect to the 'most likely, most reasonable, interpretation of the statute, given its design and purpose.'" *Adekale v. State*,

2015 WY 30, ¶ 12, 344 P.3d 761, 765 (Wyo. 2015) (quoting *Rodriguez v. Casey*, 2002 WY 111, ¶ 20, 50 P.3d 323, 329 (Wyo. 2002)). "We therefore construe each statutory provision *in pari materia*, giving effect to every word, clause, and sentence according to their arrangement and connection." *PacifiCorp, Inc. v. Dep't of Revenue, State*, 2017 WY 106, ¶ 10, 401 P.3d 905, 908 (Wyo. 2017) (quoting *Nicodemus v. Lampert*, 2014 WY 135, ¶ 13, 336 P.3d 671, 674 (Wyo. 2014) ("To ascertain the meaning of a given law, we also consider all statutes relating to the same subject or having the same general purpose and strive to interpret them harmoniously.").

*Solvay Chemicals, Inc.*, ¶ 8, 517 P.3d at 1149. "We do not interpret a statute 'in a way that renders a portion of it meaningless . . . .'" *Conrad v. Uinta Cnty. Republican Party*, 2023 WY 46, ¶ 20, 529 P.3d 482, 491 (Wyo. 2023) (quoting *Miller v. Life Care Ctrs. of Am., Inc.*, 2020 WY 155, ¶ 26, 478 P.3d 164, 171–72 (Wyo. 2020)).

## DISCUSSION

[¶16] The WPRA defines public records as:

> "Public records" when not otherwise specified includes any information in a physical form created, accepted, or obtained by a governmental entity in furtherance of its official function and transaction of public business which is not privileged or confidential by law. Without limiting the foregoing, the term "public records" includes any written communication or other information, whether in paper, electronic, or other physical form, received by a governmental entity in furtherance of the transaction of public business of the governmental entity, whether at a meeting or outside a meeting. Electronic communications solely between students attending a school in Wyoming and electronic communications solely between students attending a school in Wyoming and a sender or recipient using a nonschool user address are not a public record of that school. As used in this paragraph, a "school in Wyoming" means the University of Wyoming, any community college and any public school within a school district in the state;

Wyo. Stat. Ann. § 16-4-201(a)(v). The WPRA classifies public records into two categories:

7

(A) "Official public records" includes all original vouchers, receipts and other documents necessary to isolate and prove the validity of every transaction relating to the receipt, use and disposition of all public property and public income from all sources whatsoever; all agreements and contracts to which a governmental entity is a party; all fidelity, surety and performance bonds; all claims filed against a governmental entity; all records or documents required by law to be filed with or kept by a governmental entity of Wyoming; and all other documents or records determined by the records committee to be official public records;

(B) "Office files and memoranda" includes all records, correspondence, exhibits, books, booklets, drawings, maps, blank forms, or documents not defined and classified in subparagraph (A) of this subsection as official public records; all duplicate copies of official public records filed with any governmental entity; all documents and reports made for the internal administration of the office to which they pertain but not required by law to be filed or kept with the office; and all other documents or records, determined by the records committee to be office files and memoranda.

Wyo. Stat. Ann. § 16-4-201(a)(vi). Under the WPRA, once "any person" asks to review or inspect a public record, the custodian of that record "shall" allow inspection unless:

(i) The inspection would be contrary to any state statute;

(ii) The inspection would be contrary to any federal statute or regulation issued thereunder having the force and effect of law; or

(iii) The inspection is prohibited by the rules promulgated by the supreme court or by the order of any court of record.

Wyo. Stat. Ann. § 16-4-203(a). "Striking a delicate balance between the public's right of access to government records and the protection of proprietary information, the WPRA contains several exemptions from disclosure, which are set forth in [Wyoming Statute] §§ 16-4-203(b) & (d)." *Powder River Basin Res. Council v. Wyo. Oil & Gas Conservation Comm'n*, 2014 WY 37, ¶ 35, 320 P.3d 222, 231 (Wyo. 2014).

[¶17] If the custodian of the public record does not disclose the requested record, "a person aggrieved" by that failure may "[a]pply to the district court of the district wherein the

8

record is found for an order to direct the custodian of the record to show cause why he should not permit the inspection of the record and to compel production of the record if applicable." Wyo. Stat. Ann. § 16-4-203(f)(i). The WPRA also sets forth the procedure for the custodian to follow to obtain authorization to withhold the record from disclosure:

> If, in the opinion of the official custodian of any public record, disclosure of the contents of the record would do substantial injury to the public interest, notwithstanding the fact that the record might otherwise be available to public inspection, he may apply to the district court of the district in which the record is located for an order permitting him to restrict disclosure. After hearing, the court may issue an order upon a finding that disclosure would cause substantial injury to the public interest. The person seeking permission to examine the record shall have notice of the hearing served upon him in the manner provided for service of process by the Wyoming Rules of Civil Procedure and has the right to appear and be heard.

Wyo. Stat. Ann. § 16-4-203(g).

[¶18] The WPRA "creates a presumption that the denial of inspection of a public record is contrary to public policy." *Laramie Cnty. Sch. Dist. No. One v. Cheyenne Newspapers, Inc.*, 2011 WY 55, 250 P.3d 522, 525 (Wyo. 2011) (citing *Houghton*, 870 P.2d at 1053). The WPRA "places 'the burden of proof upon the custodian to show that the exercise of his discretion does not run afoul of statutory limitations in any particular instance where custodial withdrawal is effected.'" *Aland v. Mead*, 2014 WY 83, ¶ 45, 327 P.3d 752, 767 (Wyo. 2014) (quoting *Powder River Basin Res. Council,* 2014 WY 37, ¶ 34, 320 P.3d at 231).

[¶19] We have recognized:

> In crafting the WPRA, the legislature anticipated that disagreements would arise between members of the public and the various custodians of public records as to whether particular documents or pieces of information are subject to disclosure and inspection under the Act. It therefore specified that those conflicts could be resolved in the district court by applying for an order directing the custodian to show cause why inspection of a denied record should not be permitted. In short, the custodian must explain why she denied access to specified records, and/or explain why the court should not grant the requesting party some relief from the custodian's decision. That procedure is the exclusive means of challenging

9

> a State governmental entity's denial of access to the records it maintains.

*Guy v. Lampert*, 2016 WY 77, ¶ 14, 376 P.3d 499, 503 (Wyo. 2016) (internal citations omitted). "The role of the district court is to examine the disputed information, all of the other materials in the record and the applicable law, and then make a judgment as to whether the custodian was correct in his conclusion." *Powder River Basin Res. Council*, 2014 WY 37, ¶ 24, 320 P.3d at 230 (quoting *Allsop v. Cheyenne Newspapers, Inc.*, 2002 WY 22, ¶ 29, 39 P.3d 1092, 1101 (Wyo. 2002)). The district court must "employ logic and reason in that process." *Id.* (quoting *Allsop*, ¶ 29, 39 P.3d at 1101). "If the custodian bears his burden of showing that an exemption applies to the record sought, that is the end of the judicial inquiry. If the custodian fails to prove that the record is exempt from inspection by the public, the **court must order the custodian to allow inspection**." *Id.* at ¶ 25, 320 P.3d at 230 (emphasis added) (internal citations omitted).

## I. Did the district court err by denying Ms. Gates's request to order MHCC to produce documents relating to the MB settlement?

[¶20]  Ms. Gates contends the district court erred when it found the MB settlement was not subject to production under the WPRA. She claims the district court misapplied the rules of statutory construction when it found the WPRA only applies to "filed claims." She also claims the district court ignored portions of the statutory definition, including those requiring the production of "documents . . . relating to the receipt, use and disposition of all public property and public income[,]" and contracts to which a governmental entity is a party. In its brief, MHCC stated:

> In light of the [d]istrict [c]ourt's summary judgment decision and stipulated protective order, and in consideration of other factors, Memorial Hospital of Converse County (MHCC) no longer objects to the production of the settlement agreement at issue. Consequently, the Wyoming Public Records Act ("WPRA") issue regarding the production of the M.B. settlement agreement is now moot.

Later in its brief, MHCC stated it would produce the MB settlement "pursuant to the terms of the Protective Order entered by the [d]istrict [c]ourt." At oral argument, both parties represented there was now only one issue before the Court: whether the district court properly entered the protective order. However, after reviewing the record, MHCC's concession appears to be contingent upon this Court upholding the protective order. Given

10

our decision on the protective order below, we find this issue is not moot and needs to be addressed.[4]

[¶21]   In its summary judgment order, without analysis or explanation, the district court summarily concluded: "The plain and ordinary meaning of 'all claims filed against a governmental entity' under Wyo. Stat. Ann. 16-4-201 refers only to *filed* claims."   The district court ended its analysis there and did not consider Ms. Gates's argument that the MB settlement fell under another section of the statutory definition.   As set forth above, "claims filed against a governmental entity" is only one type of "official public record" subject to production under the Act. Wyo. Stat. Ann. § 16-4-201(a)(iv)(A).   The WPRA also covers "all agreements and contracts to which a governmental entity is a party[,]" and all documents relating to the "use and disposition of all public property and public income . . . ." *Id.*   The district court erred when it failed to consider the other sections of the statutory definition before determining the MB settlement agreement was not subject to the Act.   By doing so, the district court rendered portions of the WPRA meaningless, in violation of our rules of statutory interpretation. *See, e.g., Conrad*, 2023 WY 46, ¶ 20, 529 P.3d at 491 (quoting *Miller*, 2020 WY 155, ¶ 26, 478 P.3d at 171–72).

[¶22]   As MHCC conceded, the MB settlement is a contract to which the hospital is a party that involves the use of public funds.   The MB settlement falls under the definition of an official public record, and it is subject to production under the WPRA. Wyo. Stat. Ann. § 16-4-201(a)(iv)(A).   Therefore, the district court erred when it found the MB settlement was not subject to disclosure under the WPRA, and it should have ordered MHCC to produce it.   Because the district court found the MB settlement was not subject to production under the WPRA, it never considered whether any sensitive information should be redacted from the document. On remand, the district court may consider whether certain information should be redacted from the MB settlement prior to production to Ms. Gates.

## II.   Does the WPRA allow a district court to order public records to be produced subject to a protective order?

[¶23]   Ms. Gates contends the district court's entry of a protective order was contrary to the WPRA and without evidentiary support.   Ms. Gates claims imposing a protective order on documents produced under the WPRA effectively turns the WPRA "on its head," and is contrary to the statute's intention of placing the burden on the custodian to show the record is exempt from disclosure.   She asserts MHCC failed to comply with the mandatory procedure set forth in Wyoming Statute § 16-4-203(g) for withholding a public record, and

---

[4] We have recognized that once the documents requested under the WPRA have been produced, the requestor is not entitled to another remedy, and the issue becomes moot. *See, e.g.*, *Williams v. Matheny*, 2017 WY 85, ¶ 23, 398 P.3d 521, 528 (Wyo. 2017) (finding the case was rendered moot when the custodian provided the requested records).   We note that although MHCC indicated it had agreed to produce the MB settlement, it has not yet produced those documents.   Because the hospital's concession was contingent upon the protective order and the documents have not yet been produced, the issue is not truly moot.

the hospital did not "present a shred of evidence or argument . . . that 'disclosure would cause substantial injury to the public interest.'" She contends MHCC's concerns about privacy could have been addressed through a simple redaction.

[¶24] MHCC admits it did not follow the procedure set forth in Wyoming Statute § 16-4-203(g) to obtain authorization from the district court to withhold the settlement agreements. However, it contends nothing in the statute required it to follow this process to obtain a protective order, and the parties stipulated to entry of a protective order. MHCC focuses on the use of the word "may" in the statute and claims "[t]he language is blatantly permissive and does not exclude the option for parties to stipulate to the entry of a protective order." MHCC asserts the protective order in this case "is the result of unique, case-specific circumstances." Ms. Gates contends the parties did not stipulate to the entry of a protective order in this case because there was not a "'definite and certain agreement' with specific terms." While MHCC concedes Ms. Gates did not stipulate to the specific terms of the protective order, it asserts, "Counsel's representation on behalf of Appellant . . . recognized that the [d]istrict [c]ourt may enter a protective order, in its discretion."

[¶25] Even assuming the parties' statements at the summary judgment hearing amounted to a stipulation, as characterized by MHCC, that stipulation amounted to a legal conclusion, i.e., that the WPRA authorizes district courts to enter protective orders.

> Parties to an action may not stipulate to legal conclusions to be reached by the court. It has generally been stated that the resolution of questions of law rests upon the court, uninfluenced by stipulations of the parties, and accordingly, it has been recognized that stipulations as to the law are invalid and ineffective.

73 Am. Jur. 2d *Stipulations* § 4 (June 2023 Update); *see also L.U. Sheep Co. v. Bd. of Cnty. Comm'rs of Cnty. of Hot Springs*, 790 P.2d 663, 674 (Wyo. 1990) ("[A] stipulation between the parties as to the correct law of the case is not binding upon the court."); *Aetna Cas. & Sur. Co. v. Langdon*, 624 P.2d 240, 242 (Wyo. 1981) (holding the Court was not bound by the "litigants' erroneous agreement" concerning the interpretation of a regulation).

[¶26] We have not yet addressed whether the WPRA authorizes a district court to enter a protective order. However, we have recognized a district court may use other tools, such as redaction, to facilitate the production of public records:

> We feel safe in concluding that the legislature intended for the courts to use those traditional judicial remedies that are available, as well as to fashion new ones that suit the circumstances which the statute was intended to remediate. Redaction is one such remedy. We tacitly approved of its use

12

in *Sheridan Newspapers,* though the precise issue raised here was not raised in that case. We take this opportunity to hold that a district court may use redaction as one of the remedies to vindicate the public's interests in access to public records. That redaction is an appropriate tool to be used in circumstances such as these is well established in case law, as well as in statutes.

*Allsop*, 2002 WY 22, ¶ 30, 39 P.3d at 1101 (internal citations omitted).[5]

[¶27] A protective order under Rule 26 of the Wyoming Rules of Civil Procedure (W.R.C.P.) is designed to forbid the disclosure or discovery of information, preclude inquiry into certain matters, require documents to be sealed and opened only by court order, or designate to whom the information can be disclosed after it is obtained. *See* W.R.C.P. 26(c). This type of secrecy and control is directly contrary to the object of the WPRA. *See Houghton*, 870 P.2d at 1052 ("The object of the public records act is disclosure, not secrecy . . . ."). Requiring public records to be subject to a protective order and limiting the manner in which those documents can be used does not "vindicate the public's interest in access to public records." *Allsop*, ¶ 30, 39 P.3d at 1101.

[¶28] "This Court has consistently considered federal precedent interpreting the [Freedom of Information Act (FOIA)] in determining issues under the WPRA." *Powder River Basin Res. Council*, 2014 WY 37, ¶ 37, 320 P.3d at 232 (citing *Sublette County Rural Health Care Dist. v. Miley*, 942 P.2d 1101, 1103 (Wyo. 1997)). In *National Archives & Records Administration v. Favish*, a member of the public sought death-scene photographs of a government official who died of an apparent suicide. 541 U.S. 157, 161, 124 S. Ct. 1570, 1574, 158 L. Ed. 2d 319 (2004). The Supreme Court of the United States explained:

> FOIA is often explained as a means for citizens to know "what their Government is up to." [*U.S. Dep't of Justice v. Reps. Comm. for Freedom of Press*, 489 U.S. 749,] 773, 109 S. Ct. [1468,] 14[81,] [103 L. Ed. 2d 774 (1989)]. This phrase should not be dismissed as a convenient formalism. It defines a structural necessity in a real democracy. The statement confirms that, as a general rule, when documents are within FOIA's disclosure provisions, citizens should not be required to explain why they seek the information. A person requesting the information needs no preconceived idea of the uses the data

---

[5] The legislature subsequently approved the use of redaction to facilitate public records requests. In 2019, Wyoming Statute § 16-4-202(c)(v) was amended to allow the district court to review records in camera to determine whether privileged or confidential information should be redacted to permit review of the record. 2019 Wyo. Sess. Laws ch. 174 § 1.

might serve. The information belongs to citizens to do with as they choose. Furthermore, as we have noted, the disclosure does not depend on the identity of the requester. As a general rule, if the information is subject to disclosure, it belongs to all.

541 U.S. at 171–72, 124 S. Ct. at 1580. The Supreme Court went on to say: "It must be remembered that once there is disclosure, the information belongs to the general public. There is no mechanism under FOIA for a protective order allowing only the requester to see whether the information bears out his theory, or for proscribing its general dissemination." *Id.* at 174, 124 S. Ct. at 1581.

[¶29] Other federal courts have reached similar conclusions. *See Gonzalez v. United States Citizenship & Immigr. Servs.,* 475 F. Supp. 3d 334, 346 (S.D.N.Y. 2020) (holding the court could not order a partial disclosure of the documents or disclosure pursuant to a protective order because there was no basis for such a request under FOIA); *Chiquita Brands Int'l Inc. v. S.E.C.*, 805 F.3d 289, 300 (D.C. Cir. 2015) (citing *Stonehill v. I.R.S.*, 558 F.3d 534, 538–39 (D.C. Cir. 2009) ("While information disclosed during discovery is limited to the parties and can be subject to protective orders against further disclosure, when a document must be disclosed under FOIA, it must be disclosed to the general public and the identity of the requester is irrelevant to whether disclosure is required."); *Maricopa Audubon Soc'y v. U.S. Forest Serv.*, 108 F.3d 1082, 1087 (9th Cir. 1997) ("We conclude that a district court lacks inherent power, equitable or otherwise, to exempt materials that FOIA itself does not exempt."). One federal court recognized "the idea that FOIA would require the release of certain information, but only to the first person who requests it, is obviously quite preposterous." *Greenpeace, Inc. v. Dep't of Homeland Sec.*, 311 F. Supp. 3d 110, 129 (D.D.C. 2018).

[¶30] Similarly, other states have held trial courts do not have authority to enter protective orders in public records act cases. In *Burroughs v. Thomas*, a surviving spouse sought a copy of the coroner's investigative records relating to his wife's death. 937 P.2d 12, 14 (Kan. Ct. App. 1997). When he was informed he needed to obtain a subpoena, Mr. Burroughs filed suit against the coroner seeking the records under the Kansas Open Records Act. *Id.* The district court found the records were subject to disclosure and not subject to any statutory exemptions. *Id.* at 15. However, the district court also entered a protective order allowing only Mr. Burroughs to access the records. *Id.* The appellate court found the district court could only "apply and enforce" the Open Records Act. *Id.* (citing *Kan. Human Rights Comm'n v. Topeka Golf Ass'n*, 856 P.2d 515, 523 (1993)). The appellate court held, after concluding none of the statutory exceptions applied, "[t]he district court did not have the authority to close public records which were not statutorily exempt from public disclosure." *Id.*

[¶31] In *Lawson v. City of Jackson*, a district court entered a protective order prohibiting Ms. Lawson from seeking information under the Mississippi Public Records Act or using

14

that information as evidence at trial as a sanction for discovery violations in the underlying litigation. 349 So.3d 724, 725 (Miss. 2022). The Mississippi Supreme Court found "[t]he Mississippi Public Records Act guarantees the right of any person to access public records, subject to a limited number of exceptions." *Id.* at 727 (citing Miss. Code. Ann. § 25-61-2 (Rev. 2018)). It found Ms. Lawson had a statutory right to access public records, and none of the statutory exceptions applied to the records sought by Ms. Lawson. *Id.* at 728. The Mississippi Supreme Court found "the trial court abused its discretion by restricting [Ms.] Lawson's access to public records from the City of Jackson." *Id.* The appellate court also found the district court abused its discretion by issuing a protective order preventing Ms. Lawson from offering any public records she may obtain from the city as evidence at trial. *Id.*

[¶32] In *Mitchell v. City of Cedar Rapids*, an injured motorist and his wife sued the city and a police officer after the officer fired gunshots at the motorist during a traffic stop, rendering the motorist a quadriplegic. 926 N.W.2d 222 (Iowa 2019). The plaintiff sought discovery of certain police records in the personal injury action, rather than through a separate public records suit. *Id.* at 224–25. After discussing the interplay between the civil discovery rules and Iowa's Open Records Act, the Iowa Supreme Court found the district court did not abuse its discretion when it denied the city's request for a protective order. *Id.* at 228–35. The Iowa Supreme Court noted "[a] protective order limiting disclosure to third parties would be pointless here when any member of the public could obtain the same reports through an Iowa Code chapter 22 open records request." *Id.* at 236.

[¶33] We agree with the reasoning of these cases. Disclosure under the WPRA is distinct from discovery under the Wyoming Rules of Civil Procedure. The information contained in public records subject to production under the WPRA belongs to the citizens of Wyoming to do with as they choose. *See Nat'l Archives*, 541 U.S. at 171–72, 124 S. Ct. at 1580. Although Ms. Gates is a litigant in an underlying malpractice case, the identity of the person making a public records request is irrelevant. *Id.* Any member of the public may ask to inspect a public record. Wyo. Stat. Ann. § 16-4-203(a). Using a protective order to limit Ms. Gates's use of the public records obtained under the WPRA is contrary to the law. "[I]f the information is subject to disclosure, it belongs to all." *Nat'l Archives*, 541 U.S. at 171–72, 124 S. Ct. at 1580. The district court can only "apply and enforce" the WPRA, and it does not have the authority "to close public records which [a]re not statutorily exempt from public disclosure." *Burroughs,* 937 P.2d at 15; *see also Powder River Basin Res. Council*, 2014 WY 37, ¶ 25, 320 P.3d at 230 (holding the court must order the custodian to produce the record if it is not statutorily exempt). Entering a protective order in a public records case is pointless because any member of the public can receive the same information by filing a request under the WPRA. *See* Wyo. Stat. Ann. § 16-4-203(a); *Mitchell*, 926 N.W.2d at 236. We conclude a district court lacks inherent power, equitable or otherwise, to issue a protective order to close public records the WPRA itself does not exempt.

15

[¶34]  The district court should have ordered MHCC to allow Ms. Gates to inspect the insurance carrier settlements, without imposing the protective order or placing any limits on how those records could be used.

[¶35]  Due to the entry of the protective order, the district court never considered whether portions of the insurance carrier settlements should be redacted to protect personal information like the names of the parties or the amounts of the settlements.  On remand, the district court may consider whether certain information should be redacted from the insurance carrier settlements prior to production to Ms. Gates.

## CONCLUSION

[¶36]  The district court erred when it determined the MB settlement agreement was not subject to production under the WPRA.  The MB settlement is a contract to which a governmental entity is a party, and it is a document pertaining to the use and disposition of public funds.  It falls under the definition of a public record and is subject to production under the Act.  A district court lacks inherent power, equitable or otherwise, to issue a protective order to close public records the WPRA itself does not exempt.  The district court erred when it ordered the insurance carrier settlements to be turned over subject to a protective order.  On remand the district court may consider whether sensitive information should be redacted from the MB settlement and the insurance carrier settlements prior to production.  We reverse and remand.